[No. 623-3.   Division Three.   June 26, 1973.]

THE STATE OF WASHINGTON, *Respondent,* v. CASWELL MIMS, *Appellant.*

214

David K. Crossland and Ivy, Elofson, Vincent & Hurst, for appellant.

Lincoln E. Shropshire, Prosecuting Attorney, and Robert N. Hackett, Jr., Deputy, for respondent.

MUNSON, J.—Defendant was charged with armed robbery and appeals from a judgment upon the jury's verdict of guilty as charged.

The defendant sets forth three assignments of error, none of which requires a recitation of the facts relied upon to support the robbery charge. He asserts: (a) the trial court erred in failing to poll each juror, individually, regarding a newspaper story appearing in the morning newspaper the second day of trial; (b) it was necessary to allege defendant was armed with a deadly weapon at the time the offense was committed pursuant to RCW 9.95.015; and (c) he was denied due process when subpoenaed defense witnesses failed to appear at trial.

The trial commenced on March 29, 1972. The jury was permitted to separate during recesses, after being admonished to read no news accounts concerning the trial. On March 30, 1972, the morning edition of the Yakima Herald-Republic, on its third page, carried a story captioned, "IN-

NOCENT NOT TRIED, CLAIMS PROSECUTOR." The article stated in essence that a deputy prosecuting attorney, speaking at a criminal justice workshop, had said that innocent men do not proceed all the way to trial in Yakima County; they are screened out before the proceedings ever reach that stage. On the same page below this article appeared a news item concerning appellant's jury trial. That morning, defendant moved for a mistrial. In the alternative, he asked the court to poll each juror to ascertain whether any juror had read the article and, if so, whether anyone had been influenced by it. Later that day the court asked the jury as a whole:

> There's an affair of some kind going on around here that the newspaper has referred to as a criminal justice workshop. Now, I want to inquire if there's any member of this jury that has read anything in the morning's local newspaper about the criminal justice workshop being conducted in Yakima County?

No member of the jury made a reply or response of any kind to the inquiry. The trial court concluded that no member of the jury had read the article and as a result thereof, denied defendant's motions.

As authority for the contention that each juror should have been individually polled, defendant cites *State v. Clay*, 7 Wn. App. 631, 501 P.2d 603 (1972), and the approved draft of the ABA Standards Relating to Fair Trial and Free Press § 3.5 (f) (1968).[1]

---

[1]"Questioning jurors about exposure to potentially prejudicial material in the course of the trial; standard for excusing a juror.

"If it is determined that material disseminated during the trial goes beyond the record on which the case is to be submitted to the jury and raises serious questions of possible prejudice, the court may on its own motion or shall on motion of either party question each juror, out of the presence of the others, about his exposure to that material. The examination shall take place in the presence of counsel, and an accurate record of the examination shall be kept. The standard for excusing a juror who is challenged on the basis of such exposure shall be the same as the standard of acceptability recommended in section 3.4(b), above, except that a juror who has seen or heard reports of potentially prejudicial material shall be excused if reference to the material in question at the trial itself would have required a mistrial to be declared."

The approved draft of the ABA Standards Relating to Fair Trial and Free Press, *Commentary on Specific Recommendations,* 145-47 (1968), on this issue is enlightening. It implies that actual practice in questioning of jurors with regard to exposure to prejudicial publicity varies widely: (a) en masse; or (b) individually, but in the presence of other members of the panel; or (c) individually and out of the presence of the other jurors. The committee's belief that the latter method is more likely to elicit candid responses is strongly buttressed by the field research. *See also* approved draft of the ABA Standards Relating to Fair Trial and Free Press, *Commentary on Approved Draft,* 26-27 (1968).

In *State v. Clay, supra,* the jury was not sequestered during the trial and was allowed to recess over the weekend. An article appeared in a local newspaper discussing arguments held in the absence of the jury concerning the defendant's ownership of handguns found in the house where he was arrested. The trial court had excluded this testimony. The same material was further broadcast over the local radio station, specifically reiterating the material which had been excluded. The court, in response to the defendant's request for a poll of each member of the jury, stated that it had admonished the jury at the beginning of the trial not to read anything about the case, discuss it, or listen to any radio accounts on its progress and had done so again from time to time during the trial. The jury was apparently not asked, even en masse, whether they had seen or heard any of the events to which the defendant objected. Based upon these facts, the court concluded that the jurors should have been individually polled.

In the instant case the court did make an inquiry of the jury as a whole concerning the newspaper articles. Receiving no response the court concluded that no juror had read the article. We agree with defendant that the best, and most thorough, means of determining whether any juror had read the article would have been to poll each juror out of the presence of the other members of the jury. However,

as is recognized by the commentary to the ABA Standards, that is not the only method by which the inquiry could be made. Here, an experienced trial judge asked the jurors if they had read the article and he received no response. There is no showing by the defendant, from interviews with any juror subsequent to the trial, nor on a motion for new trial, that any of them had read the newspaper account upon which error is assigned. Having reviewed the entire record, we do not find that the trial court's handling of this particular matter was error. Cf. *State v. Fassler,* 108 Ariz. 586, 503 P.2d 807 (1972); *State v. Bigley,* 202 N.W.2d 56 (Iowa 1972).

Defendant next assigns error to the submission of the issue of a deadly weapon to the jury by special interrogatory pursuant to RCW 9.95.015,[2] when no allegation was contained in the information filed by the prosecutor.

The information in the instant case did not allege in the charging portion that the defendant committed the crime of robbery while armed, although the information did denominate the charge as "armed robbery." Yet, by special interrogatory, the jury was asked to decide whether defendant was armed with a deadly weapon during the course of the robbery; they answered the question affirmatively. The query is whether the denomination of the offense as "armed robbery," outside the charging portion of the information, was sufficient to meet the RCW 9.95.015 requirement of an "allegation" that defendant committed the charged crime while armed with a deadly weapon, and was sufficient to put the defendant upon notice that he was

---

[2]RCW 9.95.015 "In every criminal case wherein conviction would require *the board of prison terms and paroles* to determine the duration of confinement and wherein there has been an *allegation* and evidence *establishing* that the accused was armed with a deadly weapon at the time of the commission of the crime, the court shall make a finding of fact of whether or not the accused was armed with a deadly weapon, as defined by RCW 9.95.040, at the time of the commission of the crime, or if a jury trial is had, the jury shall, if it find the defendant guilty, also find a special verdict as to whether or not the defendant was armed with a deadly weapon, as defined in RCW 9.95.040, at the time of the commission of the crime." (Italics ours.)

subjecting himself to a possible mandatory minimum sentence of at least 5 years? We answer in the negative.

In *State v. Frazier*, 81 Wn.2d 628, 503 P.2d 1073 (1972), the court examined RCW 9.41.025,[3] which requires a trial court to impose a mandatory minimum sentence, not subject to suspension or deferral, if defendant is found to have been armed with a firearm during the commission of a felony. The statute does not specifically require an allegation to that effect in the information. The court nevertheless held that a defendant is entitled to notice by allegation in the information: "that, if convicted, and if the jury finds the facts causing the aggravation are correct, she will have no possibility of probation." 81 Wn.2d at 634.

Pursuant to RCW 9.41.025, as interpreted in *Frazier*, a trial court is precluded from exercising its "independent judgment" in determining whether to defer or suspend sentence and is required to incarcerate the defendant upon a factual determination made adverse to him. RCW 9.95.040[4] removes from the Board of Prison Terms and Paroles its discretion in fixing minimum terms in specific instances

[3]RCW 9.41.025 "Any person who shall commit or attempt to commit any felony, . . . while armed with, or in the possession of any firearm, shall upon conviction, in addition to the penalty provided by statute for the crime committed without use or possession of a firearm, be imprisoned as herein provided:

"(1) For the first offense the offender shall be guilty of a felony and the court shall impose a sentence of not less than five years, which sentence shall not be suspended or deferred;"

[4]RCW 9.95.040 in part states:

"The following limitations are placed on the board of prison terms and paroles with regard to fixing the duration of confinement in certain cases, notwithstanding any provisions of law specifying a lesser sentence, to wit:

"(1) For a person not previously convicted of a felony but armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than five years.

"(2) For a person previously convicted of a felony either in this state or elsewhere and who was armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than seven and one-half years.

"The words 'deadly weapon,' as used in this section include, . . . any dirk, dagger, pistol, revolver, or any other firearm, . . ."

and requires mandatory minimum terms where deadly weapon use was found by the jury.

If, under RCW 9.41.025, due process of law requires notice in the information of a potentially greater penalty, where the statute itself requires no such allegation, a similar notice must be required under RCW 9.95.015, which specifically requires such an allegation.[5] A defendant is as much entitled to notice that, upon conviction and incarceration, the Board of Prison Terms and Paroles in determining his minimum sentence is bound to follow certain fixed minimum periods of incarceration under RCW 9.95.015, as he is to notice that a judge in imposing sentence under RCW 9.41.025 is required to sentence him to confinement for a certain fixed minimum period of time. In either instance he is entitled to notice of the possible effects a conviction and sentence may have upon him prior to either entering his plea or going to trial. Captioning the charge "armed robbery" without so stating in the charging portion of the information was insufficient notice.

Lastly, defendant claims a denial of due process because four witnesses whom he had subpoenaed failed to attend the trial. In fact, two of the witnesses were never served with subpoenaes because they could not be located. Defendant's testimony indicated these witnesses, if called, might testify to meeting the defendant as he went

---

[5]Plaintiff cites two cases for the proposition that such a deadly weapon allegation is unnecessary. Both cases are readily distinguishable. In *State v. Redden,* 71 Wn.2d 147, 151, 426 P.2d 854 (1967), the court, in discussing RCW 9.95.015, held an information was deemed to be amended by the evidence to include a deadly weapon allegation; but we further note that since the jury therein by special finding held the defendant not to be armed with a deadly weapon, the court found no prejudice to defendant. In *State v. Sorenson,* 6 Wn. App. 269, 492 P.2d 233 (1972), interpreting RCW 9.95.015, the information in the charging portion did allege as assault made with a deadly weapon. Hence, the court was required to give an instruction defining "deadly weapon," and submit a special interrogatory to the jury to determine if the weapon, if any, was within the definition of that term.

Likewise, neither *State v. Slaughter,* 70 Wn.2d 935, 425 P.2d 876 (1967) nor *State v. Jackson,* 70 Wn.2d 498, 424 P.2d 313 (1967) go to the issue of notice. They are not controlling on that issue.

from bar to bar on the night of the incident in question. We are not satisfied that there was a sufficient offer of proof, or showing by other means, of any material facts to which these witnesses would testify that were not already before the jury. Furthermore, defendant's failure to timely request a continuance to locate these potential witnesses precludes him from now claiming a denial of due process of law. *See State v. Schaffer,* 70 Wn.2d 124, 422 P.2d 285 (1966); *cf. State v. Callas,* 68 Wn.2d 542, 546, 413 P.2d 962, *petition for cert. dismissed,* 385 U.S. 995, 17 L. Ed. 2d 455, 87 S. Ct. 612 (1966), *cert. denied,* 390 U.S. 970, 19 L. Ed. 2d 1178, 88 S. Ct. 1087 (1968); *State v. Summers,* 60 Wn.2d 702, 706, 375 P.2d 143 (1962).

Judgment of conviction is affirmed, and the cause remanded for resentencing with instruction to void the special verdict and to strike the reference to the 5-year minimum term from the judgment.

GREEN, C.J., and McINTURFF, J., concur.