[No. 4010-1.    Division One.    December 28, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. BARBARA STAMM, *Appellant.*

*Bangs & Castle* and *Gerald L. Bangs,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Lee D. Yates* and *Roy N. Howson, Deputies,* for respondent.

CALLOW, J.—The defendant Barbara Stamm appeals from a conviction of attempted murder in the first degree, committed with a deadly weapon. We affirm the conviction, but remand the cause for resentencing.

During the evening of November 5, 1974, Christopher Fisher attempted to kill Ralph Beuter. Beuter was shot but not killed. Fisher subsequently entered a plea of guilty to a charge of first-degree assault. During the trial of Barbara Stamm, Fisher testified that Stamm had hired him to kill Beuter. The jury returned a verdict finding the defendant Stamm guilty of attempted murder in the first degree, and returned a special verdict that the crime was committed with a deadly weapon, a firearm. A sentence of life imprisonment was imposed upon the defendant Barbara Stamm under RCW 9.01.080, and she appeals.

She asserts assignments of error that challenge the scope of discovery, the admission and exclusion of evidence, the conduct of the trial judge, and the sentence imposed.

The first claim of error concerns the pretrial order appointing a psychiatrist and directing a psychiatric examination of Fisher, the chief witness for the prosecution, to determine his competency to testify. *See* CrR 6.12. The defendant argues that the trial court erred in refusing to permit the defendant to select the psychiatrist to perform the examination and in limiting the scope of the examination to a determination of whether Fisher was competent to

testify. The defendant asserts that a psychiatrist chosen by her should have been appointed to conduct an extensive psychiatric examination of Fisher to facilitate his impeachment at trial.

The competency of a witness to testify is for the trial court within the exercise of sound discretion. RCW 5.60.050; *State v. Pethoud*, 53 Wn.2d 276, 332 P.2d 1092 (1958), *cert. denied*, 359 U.S. 949, 3 L. Ed. 2d 682, 79 S. Ct. 734 (1959); *State v. Bishop*, 51 Wn.2d 884, 322 P.2d 883 (1958); *State v. Moorison*, 43 Wn.2d 23, 259 P.2d 1105 (1953). The trial court is cloaked with this control so that the collateral issue of each witness' ability to understand the nature of the oath and give a correct account of what has been seen and heard does not engulf the prime inquiry of the trial. Whether a prosecution witness should be compelled to submit to a psychiatric examination, and by whom, is likewise within the trial court's judgment. *United States v. Pacelli*, 521 F.2d 135 (2d Cir. 1975), *cert. denied*, 424 U.S. 911, 47 L. Ed. 2d 314, 96 S. Ct. 1106 (1976); *Ledbetter v. United States*, 350 A.2d 379 (D.C. App. 1976); *Borosh v. State*, ............ Ind. App. ............, 336 N.E.2d 409 (1975); *State v. Klueber*, 81 S.D. 223, 132 N.W.2d 847 (1965). *See also* Juviler, *Psychiatric Opinions as to Credibility of Witnesses: A Suggested Approach*, 48 Calif. L. Rev. 648 (1960); E. Cleary, *McCormick's Handbook of the Law of Evidence* § 45 (2d ed. 1972).

We recognize that expert testimony as to the credibility of a witness is admissible if the mental condition of a prospective witness is questioned. However, the management of this field of inquiry is for the trial court, who must decide if expert testimony will help cast light on whether the particular mental disorder would affect credibility. *State v. Smythe*, 148 Wash. 65, 268 P. 133 (1928); *State v. Smith*, 103 Wash. 267, 174 P. 9 (1918); *State v. Schuman*, 89 Wash. 9, 153 P. 1084 (1915); Annot., 20 A.L.R.2d 687 (1968). Here, there was no abuse of discretion.[1] The trial

[1] Competence to testify and credibility are intertwined though separate areas for investigation. The trial court has discretionary control in

judge appointed an independent psychiatrist, an examination was conducted, and the defendant was permitted to employ the psychiatrist's testimony in an attempt to impeach the credibility of the witness. It was not error to refuse to appoint a psychiatrist of the defendant's choosing, or to limit the scope of the examination of such an impeachment witness. This aspect of the impeachment inquiry was conducted fairly and reasonably. *See Hamling v. United States*, 418 U.S. 87, 41 L. Ed. 2d 590, 94 S. Ct. 2887 (1974); *United States v. Hiss*, 88 F. Supp. 559 (S.D.N.Y. 1950); E. Cleary, *McCormick's Handbook of the Law of Evidence* § 45 (2d ed. 1972).

█ The defendant next assigns error to the exclusion of the testimony of the Seattle police detective who administered a polygraph examination to the witness Fisher. The defendant offered to prove through the detective that Fisher was "an unfit subject for testing." The purpose of presenting this testimony was to show that Fisher was mentally ill and therefore incompetent to testify. The issue thereby presented is whether the polygraph examiner, who concludes that a person cannot react to a polygraph examination in such a way that the examiner can interpret the reactions, can testify to that conclusion and it can be inferred therefrom that the subject does not have the capacity to be a witness. Posing the issue thusly reveals that the proposition it proposes does not follow. The criteria for evaluating testability by a polygraph is very different from the capacities required of a witness. The polygraph examiner wishes to discover whether the person to be tested is so psychologically, emotionally, and physiologically constituted that his reactions will indicate to the examiner whether true or false answers are being given. The judge inquiring into the capacity of a person to be a witness wishes to ascertain whether the proffered witness can understand the nature of the oath and recount what he or she has seen or heard.

both areas of inquiry. *See* 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 601[01] Commentary (1975); 3A J. Wigmore, *Evidence* § 876 (1970).

One inquiry is not probative or relevant to the other. The trial court acted within its discretion in cutting off this line of questioning. *Chase v. Beard*, 55 Wn.2d 58, 346 P.2d 315 (1959). *See also State v. Carter*, 5 Wn. App. 802, 490 P.2d 1346 (1971); 5 R. Meisenholder, Wash. Prac. §§ 2, 162, 302 (1965).

The third assignment challenges the exclusion of certain statements made by the witness Fisher to the polygraph examiner. The statements were made in response to standard questions asked preliminarily to a polygraph examination to determine Fisher's suitability for the test. The answers concerned the witness' prior nervous disorder, medical problems, memory loss, heart ailment, and his successful evasion of a prior polygraph test. The defendant contends that the responses made in an offer of proof should have been admitted to impeach Fisher's credibility. The connection between these proffered facts and the witness' credibility is conjectural only.[2] The statements properly were refused as an attempt to impeach credibility on matters that were immaterial and collateral to the principal issues presented. The responses given to the polygraph examiner could not have been admitted into evidence for any other independent purpose, and did not pertain to whether the defendant hired Fisher to kill Beuter or to any other issue in the case. They were properly excluded. *State v. Oswalt*, 62 Wn.2d 118, 381 P.2d 617 (1963); *State v. Hall*, 10 Wn. App. 678, 519 P.2d 1305 (1974).

The fourth asserted error is the trial court's permitting

[2]Polygraph examination results themselves are inadmissible at trial due to their questioned trustworthiness, absent a stipulation by both the prosecution and the defense permitting their use. *State v. Young*, 87 Wn.2d 129, 550 P.2d 1 (1976); *State v. Woo*, 84 Wn.2d 472, 527 P.2d 271 (1974). Certainly, the results would be of no probative value where the polygraph examiner has concluded that the person was not a fit subject for an examination. *State v. Young, supra; State v. Carr*, 13 Wn. App. 704, 537 P.2d 844 (1975). *See also Seattle Police Officers' Guild v. Seattle*, 80 Wn.2d 307, 320, 494 P.2d 485 (1972) (Rosellini, J., dissenting); RCW 49.44.120 (added by Laws of 1965, ch. 152, § 1, amended by Laws of 1973, ch. 145, § 1); Hermann, *Privacy, The Prospective Employee, and Employment Testing: The Need to Restrict Polygraph and Personality Testing*, 47 Wash. L. Rev. 73 (1971).

the witness Fisher's mother to relate statements made by Fisher to her during a telephone conversation on the day following the shooting. During cross-examination of Fisher's mother, the defense counsel queried her as follows:

Q [Defense counsel] All right now, did you also call Chris on that day?

A Yes.

Q Okay, did you think you got any facts from Chris?

A He told me things.

Q Okay, and did you think you got the name Kruse or Butler from Chris?

A I don't know. He didn't mention any name whatever.

Q Then you don't think you got the name Kruse or Butler from Chris?

A I am positive.

On redirect examination, the prosecutor questioned Fisher's mother as follows:

Q When Chris talked to you from the hospital, did he tell you why he had done the shooting?

A I guess if you —

THE COURT: Did he tell you why he did or didn't, yes or no. You don't have to go into explanation, just say yes or no.

A Yes.

THE COURT: He did; all right.

Q [Prosecutor] What did he tell you in that regard?

A That I would understand all about it later on and that he had done it for a friend of mine.

Q Did you question him about that?

A I said, I don't have any friend in Seattle. The only friend I had in Seattle is living with me now, meaning Donna.

Q And what did you tell him at that point?

A That was my response to him and his response to me was, you're not thinking hard enough and I; then I mentioned a name to him —

[Defense counsel]: Objection to any further testimony along this line, your Honor. It has never been brought up before and never been provided to us in any statement. I have no idea where it is going.

[Prosecutor]: He has opened up the whole line.

THE COURT: Objection overruled.

Q [Prosecutor] You may answer the question. What did you say at that time?

A I mentioned a name to him and he said, no. He said to me he couldn't mention any names to me when I said, who, because there were policemen in the room. And I mentioned a name to him and he said, you're right.

Q What name did you mention to him?

A Stamm.

The defendant argues that this testimony on redirect examination should have been excluded as hearsay, as testimony not included in the witness summary given to the defense prior to trial pursuant to the omnibus order and CrR 4.7, and testimony that exceeded the scope of cross-examination.

■ The testimony was hearsay, but could be admitted to bring out the remaining portion of the conversation opened up on cross-examination. The witness had been asked about a telephone conversation with her son and had stated that he did not mention any names in that conversation. When such an inquiry was made, the opposing party could question the witness concerning the entire conversation on redirect examination and pursue the issue as to what person, if anyone, was named in the conversation. *State v. DeGaston*, 1 Wn.2d 93, 95 P.2d 410 (1939); *State v. Edelstein*, 146 Wash. 221, 262 P. 622 (1927); *State v. Meyerkamp*, 82 Wash. 607, 144 P. 942 (1914); *State v. Regan*, 8 Wash. 506, 36 P. 472 (1894). The defense commenced the inquiry into the nature of the telephone conversation between Fisher and his mother during cross-examination, and now is precluded from challenging the prosecution's attempt to bring out more of the same conversation on redirect.

CrR 4.7 does not require exclusion of the testimony. CrR 4.7(a)(1)(i) directs the prosecuting attorney to disclose to the defendant

the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial, together with any written or recorded statements and the substance of any oral statements of such witnesses;

CrR 4.7(h)(2) further imposes a continuing duty to

promptly disclose any additional material or information discovered up to and during trial.

■ It cannot be determined from the record that the prosecutor knew of the substance of the testimony elicited on redirect and intentionally withheld information from the defendant under circumstances which would call for sanctions under the rules. *See State v. DeWilde*, 12 Wn. App. 255, 529 P.2d 878 (1974). If we assume, for the sake of argument, that there was a violation of CrR 4.7 (we do not find such a violation), exclusion of the testimony would be inappropriate nonetheless. CrR 4.7(h)(7)(i) gives the trial judge alternative and discretionary sanctions to impose for a violation of CrR 4.7. *See State v. Glasper*, 12 Wn. App. 36, 527 P.2d 1127 (1974); *State v. Peele*, 10 Wn. App. 58, 516 P.2d 788 (1973). The rule provides in part:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, dismiss the action or enter such other order as it deems just under the circumstances.

The sanctions provided by CrR 4.7(h)(7)(i), however, do not include suppression of the evidence. As stated in *State v. Glasper, supra* at 38-39:

> Significantly, exclusion of evidence as a sanction was expressly rejected by the Washington Judicial Council and the Washington Supreme Court.
> Comment
> *ABA Draft-Discovery* § 4.7. This rule was adapted from Fed.R.Crim.P. 16(g). The Advisory Committee intentionally omitted one provision of 16(g)—that the court might "prohibit the party from introducing in evidence the material not disclosed."
> *Washington Proposed Rules of Criminal Procedure*, Rule 4.7, Comment at 85 (1971).

The admission of the testimony was not error.

The fifth challenge raised is to the exclusion of the testimony of a police detective. Prior to the shooting, Fisher

told an informant of the planned killing. The informant told a police detective. At the trial, Fisher first testified that he had explained the plan to the informant in detail. The defense then offered and the court admitted the videotaped deposition of the informant into evidence. The informant testified that Fisher had only revealed his general intention to kill someone for a $1,000 fee. To corroborate the informant's testimony concerning the information that Fisher had disclosed prior to the shooting, the defense called the detective to whom the informant had relayed the information received from Fisher. The defense sought to have the detective testify concerning what the informant had or had not told the detective, but such testimony was excluded as hearsay.

The defense argues that the detective's repetition of the informant's out-of-court statements was offered, not to prove the truth of the matters asserted, but only as circumstantial evidence of the informant's state of mind.

It is apparent that the purpose for which the evidence was offered was to prove that Fisher had not revealed, as he had testified earlier, the details of the planned killing to the informant and thus impeach Fisher. The evidence was hearsay.

> [H]earsay evidence is testimony in court . . . of a statement made out of court, such statement being offered . . . to show the truth of the matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.

5 R. Meisenholder, Wash. Prac. § 381, at 374 (1965). *State v. Haga*, 8 Wn. App. 481, 507 P.2d 159 (1973); *State v. Lane*, 4 Wn. App. 745, 484 P.2d 432 (1971). The testimony was properly excluded as hearsay.

However, even if, as alleged, the testimony was offered not to prove the truth of the matters asserted but as evidence of the declarant's state of mind, the exclusion of the evidence was not error. Out-of-court statements are admissible to show a declarant's state of mind only if said state of mind is "relevant to a material issue in the cause."

*State v. Murphy*, 7 Wn. App. 505, 509, 500 P.2d 1276 (1972); E. Cleary, *McCormick's Handbook of the Law of Evidence* § 249 (2d ed. 1972); 5 R. Meisenholder, Wash. Prac. § 383 (1965). The state of mind of the informant was not relevant to any issue in the case.

The defendant next contends it was error to exclude testimony of Fisher's prior acts and statements offered to portray his personality and lifestyle. The evidence was offered in an attempt to show that Fisher was mentally ill, had bullied and threatened to kill others, and was capable of both murdering someone whom he did not know as well as attempting to falsely accuse the defendant. The defendant asserts that the testimony was offered as circumstantial evidence of Fisher's character to prove his conduct and motive. The prosecution replies that the character evidence was offered in an improper attempt to impeach Fisher's credibility. Under either theory, the evidence was inadmissible.

■ Specific acts of misconduct of a witness cannot be proved on either cross-examination or through extrinsic evidence to impeach the credibility of the witness. *State v. Lampshire*, 74 Wn.2d 888, 447 P.2d 727 (1968); *State v. Emmanuel*, 42 Wn.2d 1, 253 P.2d 386 (1953); *State v. Johnson*, 14 Wn. App. 225, 540 P.2d 435 (1975). If the evidence was offered for impeachment, it was properly excluded. If the testimony was offered as circumstantial evidence of Fisher's conduct to show motive, it was also inadmissible. Evidence of prior unrelated specific acts of misconduct may not be admitted unless the evidence is relevant to show a *defendant's* motive, intent, absence of accident or mistake, common scheme or plan, identity, or is otherwise relevant and necessary to prove an essential element of the crime. *State v. Hess*, 86 Wn.2d 51, 541 P.2d 1222 (1975); *State v. Boggs*, 80 Wn.2d 427, 495 P.2d 321 (1972); *State v. Mack*, 80 Wn.2d 19, 490 P.2d 1303 (1971); *State v. Golladay*, 78 Wn.2d 121, 470 P.2d 191 (1970); *State v. Goebel*, 40 Wn.2d 18, 240 P.2d 251 (1952); *State v. Hughes*, 14 Wn. App. 186, 540 P.2d 439 (1975); *State v. Calhoun*, 13 Wn. App. 644, 536

P.2d 668 (1975); *State v. Riconosciuto*, 12 Wn. App. 350, 529 P.2d 1134 (1974). Here, the evidence was properly excluded since it was proposed against a witness and not against the defendant. *See State v. Johnson, supra.* Character evidence in the form of prior, unrelated, specific acts of misconduct, offered to show that Fisher was capable of committing the shooting and his motive and his intent in shooting the victim, was not material to the issues in the case. The fact that Fisher shot the victim was undisputed. The issue was whether the defendant had offered Fisher $1,000 to shoot the victim. Evidence of his prior misconduct was properly excluded.

The seventh claim of error is that the prosecution unfairly used pretrial statements by the defendant, taken in violation of *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), to impeach the defendant's credibility. The defendant asserts that the prosecutor improperly asked the defendant on cross-examination whether during police interrogation she had denied making telephone calls to Fisher. She answered that she had not denied making calls, for the police had never asked her whether she had telephoned Fisher. During rebuttal, the interrogating police officer confirmed the defendant's testimony that during her questioning she was not asked whether she had telephoned Fisher. The defendant now argues that, because the inferences created by the attempted impeachment were not substantiated by the rebuttal testimony, the prosecutor's questions constituted misconduct that warrants the granting of a new trial.

Pretrial custodial statements of an accused taken during an interrogation without a prior advisement of *Miranda* rights are admissible for impeachment of a defendant on cross-examination. *Oregon v. Hass*, 420 U.S. 714, 43 L. Ed. 2d 570, 95 S. Ct. 1215 (1975); *Harris v. New York*, 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643 (1971); *State v. Davis*, 82 Wn.2d 790, 514 P.2d 149 (1973); *In re Noble*, 15 Wn. App. 51, 547 P.2d 880 (1976). An intentional, bad faith use of the statements on cross-examination by the prosecution to cre-

ate an inference of deception with the knowledge that the inference would not be corroborated by the rebuttal testimony may constitute a breach of a prosecutor's duty, as a quasi-judicial officer of the court, to insure that an accused is afforded a fair trial. *State v. Huson*, 73 Wn.2d 660, 440 P.2d 192 (1968), *cert. denied*, 393 U.S. 1096 (1969); *State v. Krausse*, 10 Wn. App. 574, 519 P.2d 266 (1974); *State v. Walton*, 5 Wn. App. 150, 486 P.2d 1118 (1971).

To preserve a claim of prosecutorial misconduct for presentation on appeal, the defense must either object to the conduct at the time it takes place or move for a mistrial. Both courses of conduct afford the trial judge an opportunity to cure error through admonitions and curative instructions to the jury if it is not so flagrant and prejudicial that no curative instructions would have remedied the error. The defense cannot remain silent, gamble on a favorable verdict, and then assert error for the first time on appeal. *State v. Estill*, 80 Wn.2d 196, 492 P.2d 1037 (1972); *State v. Johnson*, 14 Wn. App. 225, 540 P.2d 435 (1975); *State v. Thompson*, 3 Wn. App. 332, 474 P.2d 906 (1970); *State v. Akridge*, 3 Wn. App. 96, 472 P.2d 621 (1970).

██ Here, the failure to object, to move for a mistrial, or to request a curative instruction precludes review of the alleged misconduct. Further, misconduct requires reversal only if there is a substantial likelihood that the misconduct affected the verdict. *State v. Young*, 87 Wn.2d 129, 550 P.2d 1 (1976); *State v. Carr*, 13 Wn. App. 704, 537 P.2d 844 (1975). We do not find that the questioning that took place would prejudice the verdict. The defendant's responses on cross-examination to the prosecutor's attempted impeachment concerning the telephone calls to Fisher were substantiated by the officer's rebuttal testimony. The rebuttal testimony served to rehabilitate the defendant as a witness rather than magnify any inference of deception created by the impeachment attempt.

In the eighth assignment of error, the defendant alleges that the trial judge improperly commented upon the tactics of the defense counsel. He argues that the conduct consti-

tuted an unwarranted, disparaging rebuke of the defense counsel's integrity and denied the defendant a fair trial. The challenge is to the trial judge's remark that the defense counsel improperly referred to the results of plea bargaining between the State and the witness, Fisher, as a "deal." The defendant also questions the court's imposition of an objection on its own behalf to a leading question by the defense counsel.

Rebukes of an attorney within the presence of the jury are within the discretion of the trial court and do not warrant a reversal unless prejudice is shown. Prejudice may be presumed, however, if the remarks were calculated to have a prejudicial effect. *State v. Levy*, 8 Wn.2d 630, 113 P.2d 306 (1941); *State v. Whalon*, 1 Wn. App. 785, 464 P.2d 730 (1970); 62 A.L.R.2d 166 (1958).

Here, prejudice has not been shown and cannot be presumed. The record does not reveal any tendency to favor the prosecution. The remark did not reflect on the integrity of the defense counsel, nor insinuate unethical conduct. The rebuke was merely a proper admonition within the discretion of the trial court that did not prejudice the defendant and, consequently, does not warrant a new trial. *See State v. Whalon, supra.*

Finally, the defendant argues that the court erred in sentencing the defendant pursuant to RCW 9.01.080.

RCW 9.01.080 provides:

> Any person who shall attempt to commit a crime punishable as a felony while armed with a pistol, revolver, or deadly weapon, shall, upon conviction be punished as if the crime attempted had been a completed act.

The defendant contends that, because the provisions of RCW 9.01.080 were neither alleged nor cited in the information, the defendant was not informed of the enhanced penalty flowing from that statute, and the statute cannot now be invoked in the sentence of the defendant. The defendant relies upon the principle enunciated in *State v. Frazier*, 81 Wn.2d 628, 503 P.2d 1073 (1972).

*State v. Frazier, supra,* held that unless a defendant has

been given notice, in the information, that a mandatory minimum penalty will be imposed for certain crimes committed while armed with a firearm, procedural due process precludes sentencing the defendant under the greater punishment statute. *See* RCW 9.41.025. The opinion states:

> Where a factor aggravates an offense and causes the defendant to be subject to a greater punishment than would otherwise be imposed, due process requires that the issue of whether that factor is present, must be presented to the jury upon proper allegations and a verdict thereon rendered before the court can impose the harsher penalty.

*State v. Frazier, supra* at 633. *See also State v. Smith,* 11 Wn. App. 216, 521 P.2d 1197 (1974). Second, in holding that notice of the enhanced punishment provisions of the statute must be set forth in the information, the opinion states that

> This is particularly true where, as is the case here, there is a special penalty for the offense added in another and apparently unrelated section of the criminal code and removed from the sentencing provision of the assault statute.

*State v. Frazier, supra* at 635. Notice of the statutory provision imposing a greater penalty is required to enable a defendant to knowledgeably select alternative courses of action. A defendant is entitled to evaluate the risks confronting him or her in order that an intelligent decision can be made on whether to plead guilty to a lesser charge (if the alternative is available), or proceed to trial.

Similar notice requirements were grafted onto the mandatory minimum sentence requirements of RCW 9.95.040 for felonies committed while armed with a deadly weapon. *See Miller v. Morris,* 10 Wn. App. 694, 519 P.2d 1314 (1974); *State v. Mims,* 9 Wn. App. 213, 511 P.2d 1383 (1973).

Cases subsequent to *State v. Frazier, supra,* have reaffirmed and interpreted the holding to require a specific allegation in the information of the particular enhanced penalty statute to be relied upon at sentencing. *State v. Cosner,* 85 Wn.2d 45, 530 P.2d 317 (1975); *State v. Perkins,*

14 Wn. App. 27, 538 P.2d 829 (1975); *State v. Whittier*, 13 Wn. App. 293, 535 P.2d 847 (1975). As recently stated in *State v. Cosner, supra* at 50-51:

> The appellate courts of this state have held that when the State seeks to rely upon either RCW 9.41.025 or RCW 9.95.040, or both, due process of law requires that the information contain specific allegations to that effect, thus putting the accused person upon notice that enhanced consequences will flow with a conviction. . . .
> . . . Preferably, compliance should take the form of pleading by statutory language and citation of the statute or statutes upon which they are proceeding, *i.e.*, firearms and/or deadly weapons.

The same due process principles must apply here. RCW 9.01.080 does create an enhanced penalty for attempts committed while armed with a deadly weapon. RCW 9.01.070 proscribes the normally lesser punishment for attempts and provides, in relevant part, as follows:

> An act done with intent to commit a crime, and tending but failing to accomplish it, is an attempt to commit that crime; and every person who attempts to commit a crime, unless otherwise prescribed by statute, shall be punished as follows:
> (1) If the crime attempted is punishable by death or life imprisonment, the person convicted of the attempt shall be punished by imprisonment in the state penitentiary for not more than twenty years.

In the present case, therefore, the defendant's punishment was enhanced from a maximum of 20 years in prison under RCW 9.01.070 to a mandatory life sentence pursuant to RCW 9.01.080. According to RCW 9.95.115, a defendant sentenced to a term of mandatory life imprisonment may not be paroled until a period of 20 consecutive years minus good time has been served.

The information contained allegations and citations to RCW 9.41.025, firearms, and RCW 9.95.040, deadly weapons. The defendant was informed that a deadly weapon was claimed to have been used and that she was subject to a greater punishment. *See State v. Frazier, supra; State v. Smith, supra.* The information did not contain a specific

allegation and citation to the enhanced penalty provision contained in RCW 9.01.080 and relied upon at sentencing as required by *State v. Cosner, supra. See also State v. Perkins, supra; State v. Whittier, supra.* Under the concepts enunciated, a defendant charged as a principal under RCW 9.01.030 is entitled to know that the prosecution intends to link RCW 9.48.030 and RCW 9.41.025, and yet seek the imposition of punishment under RCW 9.01.080. The failure to allege and cite RCW 9.01.080 in the information constituted a violation of due process that precluded sentencing pursuant to the statute. The cause must be remanded for resentencing under the guidelines of RCW 9.01.030, 9.01.070, 9.41.025, and 9.95.040.

Resolution of this allegation in favor of the defendant obviates the need to resolve the defendant's challenge to the constitutionality of RCW 9.01.080 on the grounds that the statute may result in punishment so incommensurate with the crime committed that the state and federal constitutional prohibitions against cruel and unusual punishment are violated.

The conviction is affirmed and the cause is remanded for resentencing without reference to the enhanced punishment provisions of RCW 9.01.080.

SWANSON and ANDERSEN, JJ., concur.

Petitions for rehearing denied March 29, 1977.

Review by Supreme Court pending September 29, 1977.