[No. 40882-8-I. Division One. August 10, 1998.]
THE STATE OF WASHINGTON, *Petitioner,* v. DAVID R. ISRAEL, ET AL., *Respondents,* JEFFREY O. DORMAN, *Petitioner.*

*Norm Maleng, Prosecuting Attorney*, and *Barbara Mack* and *Marilyn B. Brenneman, Deputies*, for petitioner State.

*Richard B. Cowan*, for petitioner Dorman.

*John W. Wolfe* of *Wolfe & Rodihan*; and *Joseph Chalverus* (*Gary Dubcoff* and *Marcus Topel*, of counsel), for respondents.

Cox, J. — Mental examinations of witnesses providing testimony at trial are permissible only where compelling reasons exist for such examinations. Moreover, judges determine the competency of witnesses,[1] and juries determine their credibility.[2] Here, there are no compelling reasons that justify the order in limine directing a trial witness to submit to a psychological examination. Likewise, a second order in limine that provides for the admission of expert testimony on antisocial personality disorder is in error. Accordingly, we reverse both orders in limine and remand for trial.

David Israel is one of four defendants named in a 32-count indictment that is based on a series of robberies that were committed in King, Snohomish, and Cowlitz Counties. The defendants allegedly robbed various victims in their homes. Physical and/or sexual assaults of the victims accompanied the robberies. Hundreds of thousands of dollars were allegedly stolen during the course of these events.

The State charged Israel and his three codefendants—Jeffrey O. Dorman, Willie James King, and Vincent Lee Bryant—with conspiracy to commit first degree robbery as well as substantive crimes in furtherance of the conspiracy.

---

[1] *State v. Froehlich*, 96 Wn.2d 301, 304, 635 P.2d 127 (1981).

[2] *Id.* at 304. *See also State v. Myers*, 133 Wn.2d 26, 941 P.2d 1102 (1997) (credibility determinations are solely for the jury and will not be disturbed on appeal).

The State also charged Israel with two counts of first degree kidnapping, three counts of money laundering, and two counts of first degree robbery.

The State charged Dorman with 15 counts of first degree robbery with a deadly weapon, 13 counts of first degree kidnapping, and one count of residential burglary. Dorman entered into a plea agreement with the State, under which he agreed to testify at trial and otherwise cooperate with the State in the prosecution of his codefendants. In exchange for these commitments, the State agreed to drop all charges except the conspiracy charge. Dorman agreed to plead guilty to that charge only.

Prior to trial, Israel and King (collectively, "Israel") moved in limine for the admission of expert testimony about "antisocial personality disorder" based on the assertion that Dorman suffers from this disorder. The court granted the motion, subject to certain conditions.

Shortly thereafter and on the eve of trial, Israel moved for an order compelling Dorman to submit to psychological tests administered by defense experts. The court granted the motion.

A commissioner of this court denied the State's motion for discretionary review of the two orders in limine. But a panel of judges granted the State's motion to modify the commissioner's ruling and granted discretionary review of both orders.

## I. Compelling Reasons

 The decision to order a witness to submit to psychiatric testing is within the discretion of the trial court.[3] The court abuses its discretion when its ruling is manifestly unreasonable or based on untenable grounds or untenable reasons.[4] We hold that granting discovery that directed Dorman to submit to psychological testing under the circumstances here was improper.

---

[3]*State v. Demos*, 94 Wn.2d 733, 738, 619 P.2d 968 (1980).

[4]*State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

The trial court should not order a witness to submit to a psychological examination absent a compelling reason.[5] The compelling reason requirement initially appeared in sexual assault cases.[6] In *Demos*, the defendant sought a psychological examination of the complaining witness. He argued that such an examination could provide information that could assist the trier of fact in assessing the "credibility and perceptual ability" of the witness.[7] Rejecting that argument, the court held that the accused must provide a compelling reason before a victim could be ordered to undergo a possibly traumatic psychological examination when other more traditional and less intrusive means to assess credibility and perceptual ability are available. In reaching this conclusion, the *Demos* court placed the courts of this state with the majority of courts in other jurisdictions on this question.[8]

The prohibition against ordering psychological examinations of trial witnesses absent compelling reasons is not confined to sexual assault cases. In *Hoffman*,[9] our Supreme Court applied the rule to the proposed examination of a crime witness. At trial, Hoffman moved for a psychological examination of the surviving police officer in a shoot-out, arguing that it was necessary for Hoffman's effective cross examination of that witness.[10] The Supreme Court concluded that the trial court did not abuse its discretion by denying the motion. The court noted that no question had been raised about the officer's competency to testify. Moreover, no compelling reason for the mental examination had been demonstrated:

> As we have made clear in sexual offense cases, a crime witness

[5]*State v. Hoffman*, 116 Wn.2d 51, 89, 804 P.2d 577 (1991).

[6]*See, e.g., Demos*, 94 Wn.2d at 738; *State v. Tobias*, 53 Wn. App. 635, 637, 769 P.2d 868 (1989); *State v. Braxton*, 20 Wn. App. 489, 492-93, 580 P.2d 1116 (1978), *review denied*, 91 Wn.2d 1018 (1979).

[7]*State v. Demos*, 94 Wn.2d 733, 738, 619 P.2d 968 (1980).

[8]*Id.*

[9]*State v. Hoffman*, 116 Wn.2d 51, 89, 804 P.2d 577 (1991).

[10]*Id.*

or victim should not be ordered to submit to psychiatric examination unless a defendant demonstrates a compelling reason. We perceive no reason for a different rule in this case. To conclude otherwise would smack of our countenancing a practice of placing victims and witnesses on trial in place of defendants; this we decline to do.[11]

The question we must decide is whether the compelling reason requirement should apply to the proposed compulsory psychological examination of a witness who is also an alleged coconspirator. Under the facts of this case, we see no reason to distinguish between a crime witness, as in *Hoffman*, and a crime witness who is also an alleged coconspirator.[12]

In its oral ruling, granting the requested psychological examination of Dorman, the court stated:

I think the compelling reasons are that he is an admitted coconspirator in the performance of these crimes. His testimony implicating his alleged other co-conspirators to crimes that he's already pled guilty to, and the issues of credibility that this jury is going to have to weigh are the unusual, if you will, compelling reasons for allowing this exam.

In its order in limine, the court stated:

Mr. Dorman's admitted involvement in the criminal activity at issue and his central role in the prosecution[']s case constitute compelling reasons to direct the State of Washington to produce Mr. Dorman to submit to a court ordered evaluation given the theory of Mr. Israel's defense and the court's fundamental obligation under the due process clause of the

---

[11]*Id.* (citation omitted).

[12]We note that the trial court carefully circumscribed the conditions of the examination:

[T]here shall be a single examination of Mr. Dorman by the defense experts consisting of three psychological tests and an interview. The tests will be the MMCI, MMPI, and P.A.I. The interview will be limited as to discussion of criminal acts to those which are convictions after July 1, 1986, and those admitted to in prosecution and defense interviews, and to conduct disclosed in prison records produced to the defense by the court.

State and Federal Constitution and CrR 4.7(e) to provide Mr. Israel and his counsel with the opportunity to discover those facts which support his theory of defense.

We see nothing unusual in the fact that Dorman, who has pleaded guilty to the conspiracy charge, has agreed to give testimony against Israel, his alleged coconspirator. Moreover, there is nothing unusual in the fact that Dorman's credibility will be at issue. Likewise, we see nothing here that offends due process under the state or federal constitutions. This situation is no different from any arrangement whereby an accused agrees to testify at trial under a plea agreement against accomplices or coconspirators in a charged crime.

The argument that these circumstances constitute compelling reasons might be more convincing if there were something unusual about this case and there were no other means to challenge Dorman's credibility.[13] But here there are readily available means to challenge his testimony without a compelled examination of Dorman. The State has represented both to us and to the trial court that it shall disclose to the jury Dorman's plea agreement and other aspects of his background. But even if the State fails to do this, Israel is free to offer evidence of Dorman's prior convictions for crimes of dishonesty.[14] Presumably, this would include the conspiracy charge to which he pleaded guilty here. Israel may also introduce evidence about Dorman's plea agreement, including his commitment to cooperate with the State in exchange for the dismissal of numerous other charges against him.

Israel has failed to demonstrate that these alternatives are ineffective means to challenge Dorman's credibility. In

---

[13]*Cf. United States v. Gonzalez-Maldonado*, 115 F.3d 9, 16 (1st Cir. 1997) (finding admissible expert testimony that the government's witness suffered from mental illness that made him prone to exaggeration and noting that the case presented unusual circumstances, i.e., witness was incompetent to testify, jury had no opportunity to evaluate his demeanor, and tapes containing his statements were damaging to the defense).

[14]ER 609(a).

short, there are no compelling reasons here to overcome the strong presumption that psychological examinations of witnesses to crimes shall not be allowed.

## II. Expert Opinion on Witness Credibility

The more troubling issue we must decide is whether it is proper here for an expert to render an opinion that Dorman may be diagnosed with antisocial personality disorder. This is a condition that is described in the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS.[15] We hold that such testimony is not admissible here.

■ ■ The decision to admit expert testimony about the psychological condition of a witness is within the sound discretion of the trial court.[16] We will not disturb such a ruling unless it is based on untenable grounds or untenable reasons.[17]

We begin our analysis by observing that the competency

---

[15]The diagnostic criteria for the disorder are listed in the current edition of the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-IV), at 649-50 (4th ed. 1994):

A. There is a pervasive pattern of disregard for and violation of the rights of others occurring since age 15 years, as indicated by three (or more) of the following:

(1) failure to conform to social norms with respect to lawful behaviors as indicated by repeatedly performing acts that are grounds for arrest

(2) deceitfulness, as indicated by repeated lying, use of aliases, or conning others for personal profit or pleasure

(3) impulsivity or failure to plan ahead

(4) irritability and aggressiveness, as indicated by repeated physical fights or assaults

(5) reckless disregard for safety of self or others

(6) consistent irresponsibility, as indicated by repeated failure to sustain consistent work behavior or honor financial obligations

(7) lack of remorse, as indicated by being indifferent to or rationalizing having hurt, mistreated, or stolen from another.

[16]*State v. Stamm*, 16 Wn. App. 603, 605, 559 P.2d 1 (1976), *review denied*, 91 Wn.2d 1013 (1977).

[17]*Junker*, 79 Wn.2d at 26.

of Dorman to testify is not at issue in this case. ER 601 expressly provides that:

> Every person is competent to be a witness except as otherwise provided by statute or by court rule.

Our examination of the record confirms our conclusion that the proffered expert testimony was intended solely to aid the jury in assessing Dorman's credibility, not to aid the court in determining competency. During colloquy, the court stated to counsel:

> Let me just say that the jury is going to be, as the cases repeatedly state, they're going to be the final arbiter of who is credible and who's not credible, but I want—I believe I am under an obligation to give them the tools to make those decisions.

Israel contends that he should be permitted to present expert testimony that Dorman shows signs of antisocial personality disorder and that this disorder affects his credibility. The trial court granted Israel's motion in limine to admit the expert testimony.[18]

There is no Washington case law that supports admission of expert testimony under the circumstances here. Israel relies on *Stamm*[19] and *Froehlich*.[20] That reliance is misplaced.

In *Froehlich*, both the competency and the credibility of the State's witness were called into question by his nervous demeanor on the stand. Because the defense impeached the witness through cross examination about prior mental problems, the trial court allowed the State to admit

---

[18]The court limited the scope of the testimony, by stating:

[W]hat the doctor would be allowed to testify to is: the nature of the disorder, the symptoms indicia . . . of that disorder. He is never going to be allowed—or she, I have no idea who that is—to testify to this jury that in this case this individual is lying or not lying.

[19]*State v. Stamm*, 16 Wn. App. 603, 559 P.2d 1 (1976).

[20]*State v. Froelich*, 96 Wn.2d 301, 307, 635 P.2d 127 (1981).

expert testimony to corroborate the witness' credibility.[21] Accordingly, a psychiatrist testified about the witness' "anxiety reaction," the absence of brain damage, and his ability to distinguish between truth and untruth. Our Supreme Court concluded that, under the facts of that case, the expert testimony was properly admitted for the purpose of enlightening the jury.[22]

The reason *Froehlich* is distinguishable from this case is that the holding there was expressly limited to its particular facts. The court stated:

> *Where, as here, the mental disability of a witness is clearly apparent and his competency is a central issue in the case*, the jury need not be left in ignorance about that condition or its consequences.[23]

A subsequent decision by our court recognized this limitation when it stated:

> Where the mental disability of a witness is clearly apparent and his competency is a central issue in the case, appropriate expert testimony is admissible to define the mental condition or its consequences.[24]

Here, competency is not at issue, and there is nothing to show that Dorman has a clearly apparent mental disability. Accordingly, the reasoning of the *Froehlich* court is inapplicable here.

Israel's reliance on *Stamm*, a case decided by this court before the Supreme Court's decision in *Froehlich*, is equally misplaced. There, Stamm challenged the competency of the State's chief witness at trial. The trial court ordered a psychiatric examination to determine the competency of that witness. The court also permitted expert testimony about the results of that examination.

---

[21]*Froehlich*, 96 Wn.2d at 306.

[22]*Id.* at 308.

[23]*Id.* at 306 (emphasis added).

[24]*State v. Despenza*, 38 Wn. App. 645, 648, 689 P.2d 87, *review denied*, 103 Wn.2d 1005 (1984).

On appeal, Stamm argued that the court erred by not permitting her to select the examining psychiatrist and by limiting the scope of the examination to a determination of whether the witness was competent to testify.[25] The court concluded that the trial court did not abuse its discretion in either respect. The admission of the expert psychiatric testimony itself was not at issue.

Israel relies on a footnote in *Stamm* to support his argument that, under our case law, questions as to a witness' competency are not a prerequisite to the admission of expert testimony. The footnote states:

> Competence to testify and credibility are intertwined though separate areas for investigation. The trial court has discretionary control in both areas of inquiry.[26]

This statement does not support Israel's argument. As our Supreme Court made clear in *Froehlich*, expert testimony regarding the effect of a witness' mental disability on his or her credibility is proper only when that disability is clearly apparent and the witness' competency is a central issue in the case. The *Stamm* footnote cannot and does not alter that rule.

■ Because no Washington case precisely addresses the question presented here, both Israel and the State invite our attention to the law of other jurisdictions to support their respective arguments. After carefully reviewing the cases, we conclude that admission of expert testimony on antisocial personality disorder cannot be sustained here.

Persuasive authority that such expert testimony is not admissible is found in *United States v. Barnard*.[27] There, the trial court excluded expert testimony that the State's witness, a coconspirator testifying pursuant to a plea

---

[25]*Stamm*, 16 Wn. App. at 604-05.

[26]*Id.* at 605-06 n.1 (citing 3 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S EVIDENCE ¶ 601[01] Commentary (1975); 3A JOHN HENRY WIGMORE, EVIDENCE § 876 (James H. Chadbourn ed., 1970)).

[27]490 F.2d 907, 912-13 (9th Cir. 1973), *cert. denied*, 416 U.S. 959 (1974).

agreement with the State, was a "sociopath." The Ninth Circuit affirmed, expressing "grave doubt" that the expert testimony would be helpful to the jury. The court further expressed its concern that such testimony may "cause juries to surrender their own common sense in weighing testimony" and produce a "trial within a trial" on a collateral matter.[28] The court emphasized that such testimony should be admitted only in "unusual cases."[29]

Israel attempts to distinguish *Barnard*. He cites several other cases for the proposition that expert testimony about whether a witness has a psychopathic personality is admissible to aid the jury in assessing credibility. None of these cases support that proposition.

*Coffin v. Reichard*[30] was an appeal from an order dismissing Coffin's habeas corpus petition. The Sixth Circuit concluded that Coffin had failed to establish that he was treated in a cruel and inhuman manner during his commitment for medical treatment. In reaching this conclusion, the court considered the testimony of the treating physicians, the guard who Coffin alleged had mistreated him, and a fellow inmate who witnessed Coffin's interaction with the guard. The court further noted that the trial court properly considered Coffin's hospital records, demonstrating that he was a psychopathic personality with paranoid tendencies, in evaluating his testimony.

In *Commonwealth v. Towber*,[31] the court ordered a new trial for Towber based on serious violations of his fifth amendment rights. As an additional reason for a new trial, the court noted that the trial court improperly excluded medical records regarding the psychiatric commitment of a self-confessed accomplice who testified against Towber at

---

[28]*Barnard*, 490 F.2d at 912.

[29]*Id.* at 913. *See also United States v. Awkard*, 597 F.2d 667, 50 A.L.R. FED. 594 (9th Cir.) (endorsing both the reasoning and the result of *Barnard* after the adoption of the Federal Rules of Evidence), *cert. denied*, 444 U.S. 885 (1979).

[30]148 F.2d 278 (6th Cir.), *cert. denied*, 325 U.S. 887 (1945).

[31]190 Pa. Super. 93, 152 A.2d 917 (1959).

trial. Because the witness was released from psychiatric treatment less than seven months before his confession implicating Towber, the court concluded that the hospital records should have been admitted to aid the jury in assessing his credibility.

Neither *Coffin* nor *Towber* supports Israel's argument. In both cases, only the admission of medical records was at issue, not the admissibility of expert testimony about psychopathic personality disorder. Israel's reliance on these cases is misplaced.

In *United States v. Butt*,[32] the First Circuit held that the trial court properly excluded expert testimony regarding an informal diagnosis that a witness suffered from depression or a personality defect. This holding does not support Israel's argument.

Israel appears to rely on dicta in the case, which states that "[f]or over forty years, federal courts have permitted the impeachment of government witnesses based on their mental condition at the time of the events testified to."[33] The court's authority for this statement is *United States v. Hiss*.[34] There, Hiss sought to introduce psychiatric evidence about the government's main witness, Whittaker Chambers. In a brief memorandum opinion, the District Court concluded that, because the outcome of the trial was completely dependent on the testimony of Chambers, the testimony should be allowed to aid the jury in assessing his credibility.

Israel cites the case deciding Hiss's subsequent appeal from his conviction as authority for the admission of expert testimony about psychopathic personality disorder.[35] But the propriety of the admission of the expert testimony was not an issue on appeal, so that case is not relevant here.

Therefore, of all the cases cited by Israel, only the

[32]955 F.2d 77, 83 (1st Cir. 1992).

[33]*Id.* at 82.

[34]88 F. Supp. 559, 559-60 (S.D.N.Y. 1950).

[35]*In re Writ of Hiss*, 542 F. Supp. 973, 993-94 (S.D.N.Y. 1982).

District Court's memorandum opinion in *United States v. Hiss*[36] offers any support for Israel's position. But we reject the *Hiss* case as authority for the admission of the expert testimony here.

In reaching this conclusion, we heed the dictates of the Ninth Circuit's decision in *Barnard.* There, the court emphasized that expert psychiatric testimony on a collateral matter should be admitted only in unusual cases, citing *Hiss* as an example of such a case.[37] But here, as in *Barnard,* there is nothing unusual. The situation where a coconspirator enters into a plea agreement and agrees to testify against his coconspirators is not uncommon.

Our conclusion is further buttressed by our Supreme Court's holding in *Froehlich,* which expressly limits the admission of expert psychiatric testimony to the situation where a witness's mental impairment is clearly apparent and his or her competency is a central issue in the case. None of the cases from other jurisdictions cited by Israel apply these limits. This divergence from our State case law strengthens our conclusion that the reasoning of these cases is inapplicable here.

Under these circumstances, there is no tenable basis for the admission of the expert testimony on Dorman's alleged disorder.

In light of our resolution of this issue, we need not reach the remainder of the State's arguments against the admissibility of the expert testimony.

We reverse the trial court's orders in limine and remand the case for trial.

AGID, A.C.J., and WEBSTER, J., concur.

Review denied at 136 Wn.2d 1029 (1998).

---

[36] 88 F. Supp. 559.

[37] 490 F.2d at 913.