[No. 1966-1. Division One. January 28, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. DON ANTHONY HERMAN, *Appellant*.

*Barnett, Robben, Blauert & Pease, William Merchant Pease, Richey & Hohlbein,* and *Wesley G. Hohlbein,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Edward L. Douglas, Jr., Deputy,* for respondent.

WILLIAMS, J.—This appeal from a judgment of conviction of manslaughter entered upon the verdict of a jury is based upon 14 assignments of error concerning instructions given, or offered by the defense and refused, and one omnibus assignment. Inasmuch as this opinion will not be published, the facts, known to the parties, will not be recited. The assignments of error as to the instructions are grouped into four categories in the opening brief. We will adhere to the same arrangement in this opinion.

The principal contention made in the first group of assignments of error is that the instructions which define second-degree murder (RCW 9.48.040) and manslaughter (RCW 9.48.060) do not contain the language "without excuse or justification." Instruction No. 5, the "to convict" instruction on second-degree murder, reads as follows:

> To convict the defendant Don Anthony Herman of the crime of murder in the second degree, the state must prove to you beyond a reasonable doubt:
> (1) That on or about the 23rd day of December, 1971, the defendant, Don Anthony Herman, willfully, unlawfully and feloniously did mortally wound the said Peter Hienz Betzler;
> (2) That as a result of the said wound so inflicted, Peter Hienz Betzler died;

   (3) That said killing was either:
       (a) committed with a design to effect the death of Peter Hienz Betzler;
           Or
       (b) committed while the defendant was engaged in the commission of a felony, to-wit: assault in the second degree upon Peter Hienz Betzler; and
   (4) That said act or acts on the part of the defendant occurred in King County, Washington.

   If you find from the evidence admitted in this case that the state has proved beyond a reasonable doubt elements (1), (2), (4), and either (3)(a) or (3)(b), then it will be your duty to return a verdict of guilty of the crime of murder in the second degree, I expressly point out that before you can return a verdict of guilty, all twelve of you must agree that element (3)(a) has been proved, or that element (3)(b) has been proved, or that both (3)(a) and (3)(b) have both been proved.

   If you find from the evidence or lack of evidence that the state has not proved beyond a reasonable doubt the foregoing elements, then it will be your duty to return a verdict of not guilty.

The next instruction, No. 6, defines murder in the second degree:

   You are instructed that the killing of a human being, unless it is excusable or justifiable, is murder in the second degree when:
   (1) Committed with a design to effect the death of the person killed, but without premeditation; Or
   (2) When perpetrated by a person engaged in the commission of the felony of assault in the second degree.

Instruction No. 8 advises the jury that:

   "Willfully" means intentionally and purposely and not accidentally.

   "Unlawfully" means without sanction of or contrary to law.

The "to convict" instruction on manslaughter is No. 15, and is as follows:

   To convict the defendant Don Anthony Herman of the

lesser included offense of manslaughter, the state must prove to you beyond a reasonable doubt:

(1) That on or about the 23rd day of December, 1971, the defendant did unlawfully inflict mortal wounds upon Peter Hienz Betzler;

(2) That as a result of the said wounds, the said Peter Hienz Betzler then and there died: and

(3) That said act or acts occurred in King County, Washington.

If you find from all the evidence admitted in this case that the state has proven beyond a reasonable doubt all of the foregoing elements, then it will be your duty to return a verdict of guilty of manslaughter.

If you find from all the evidence and lack of evidence that the state has not proven beyond a reasonable doubt all of the foregoing elements, then it will be your duty to return a verdict of not guilty of manslaughter.

Instruction No. 16 is as follows:

The court instructs you that where a homicide is proved beyond a reasonable doubt, the presumption is that it is murder in the second degree, and if the defendant desires to reduce the degree to manslaughter, the burden is on him to produce evidence of those facts or circumstances which call for such reduction.

Instruction No. 17 defines manslaughter as follows:

Manslaughter is the unintentional killing of a human being done without excuse or justification, by a person while engaged in the commission of an unlawful act not amounting to a felony, or in doing a lawful act in a negligent manner. It is not necessary to constitute manslaughter, that there be either premeditation or an intent to kill.

Instruction No. 30 is:

You are instructed that the law of the state of Washington provides that a homicide is excusable when committed by accident or misfortune in doing any lawful act by lawful means, with ordinary caution and without any unlawful intent.

The law further provides that before a homicide can be held excusable, four elements must be present: First, the homicide must have been committed by accident or mis-

fortune; second, it must have occurred in the doing of a lawful act, by lawful means; third, ordinary caution must have been observed by the person responsible for the killing; and fourth, this person must have acted without any unlawful intent. If any one of these four elements be eliminated from the factual situation, the homicide is not within the statutory definition.

■ The foregoing instructions advised the jury that to convict for either second-degree murder or manslaughter they must find that the act was done unlawfully, instructions No. 5 and 15, and without excuse or justification, instructions No. 6 and 17. The trial courts in *State v. Hilsinger,* 167 Wash. 427, 9 P.2d 357 (1932) and *State v. Rader,* 118 Wash. 198, 203 P. 68 (1922), relied upon by Herman to include the phrase "without excuse or justification," had omitted from their instructions defining degrees of murder the elements of excuse or justification. As seen, this was done in instructions No. 6 and 17. In addition, the "to convict" instructions require that the mortal wound must have been inflicted "unlawfully," which was defined in instruction No. 8 as "without sanction of or contrary to law." An instruction may not be read in isolation but must be considered together with all the other instructions given. *Tacoma v. Harris,* 73 Wn.2d 123, 436 P.2d 770 (1968). The jury was properly advised. *State v. Redden,* 71 Wn.2d 147, 426 P.2d 854 (1967).

The second group of assignments of error deal with instructions on self defense. Those on this subject, given by the court, are:

The term "design to effect death" as used in these instructions, means a purpose or intent to cause death. The words "design" and "intent" denote a mental condition or process, and may be shown by direct proof or may be derived from facts or circumstances, shown by the evidence. In determining the design or intent of the defendant, if any, at the time of the crimes charged, you may take into consideration the nature, character and manner of use of the weapon employed, if any; the identity of the victim; and acts, conduct and words spoken by

the defendant, if any, together with all the other facts and circumstances established by the evidence.

Instruction No. 10.

The killing of a human being is justifiable when committed in the lawful defense of the slayer when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony or to do some great personal injury to the slayer and there is imminent danger of such design being accomplished. One attacked has the right to repel force with force, but the use of excessive force by the slayer does not excuse or justify a homicide.

Instruction No. 18.

When a defendant claims that he killed another in the defense of his own person, the burden is upon the defendant to prove that the homicide was committed in self defense. This does not mean that the defendant must establish it with witnesses or evidence produced by the defendant, nor beyond a reasonable doubt nor by a preponderance of the evidence. The defendant sustains this burden of proof if from a consideration of all the evidence in the case you have a reasonable doubt as to whether or not the killing was done in self defense.

Instruction No. 20.

Under Washington law, the use, attempt or offer to use force upon or toward the person of another shall not be unlawful whenever used by a party about to be injured, in preventing or attempting to prevent an offense against his person, in case the force is not more than shall be necessary.

Instruction No. 23.

To justify a killing in self-defense, there must be, or reasonably appear to be, at or immediately before the killing some overt act, or some circumstances which would reasonably indicate to the slayer that the deceased is, at the time, attempting to kill or inflict great bodily harm upon him.

The right of self-defense is given only in emergencies to enable persons who are attacked, and to whom it may reasonably appear that their lives are endangered or their bodies are in danger of great physical injury, to

defend themselves. The right is limited to the emergency, and ends when the emergency ceases. The right is based upon what a reasonable man, having due regard for human life and safety, would do under similar circumstances.

A killing is not justified when made for the purpose of avenging insults, abuse or a previous assault which has ended, or for the purpose of settling an argument not involving physical safety. When a felonious homicide is shown, the defendant has the burden of establishing his plea of self-defense.

Instruction No. 24.

In determining the propriety of the defense of justifiable homicide, as that defense has been defined for you herein, the defendant's conduct is to be judged by the conditions as they reasonably would have appeared to the accused at the time he shot the deceased, and not as they might appear to the jury in the light of all the testimony that has been introduced. The test is whether or not a reasonably cautious and prudent man, situated as was the defendant, would have believed himself to be in imminent danger of great personal injury. Fear alone will not justify a homicide unless there is [sic] reasonable grounds therefore.

In connection with the necessary amount of force which might be used, you are instructed that the defendant must have used only that force which a reasonably cautious and prudent man, situated as was the defendant, would have used under the circumstances as they appeared to him at the time.

Instruction No. 25.

The term "great personal injury" as used in these instructions refers to an injury of a graver and more serious nature than an ordinary hitting or striking with the fists or hands.

Instruction No. 26.

While a person is not bound to retreat from a place where he has a right to remain and may lawfully repel a threatened assault, and to that end may use force enough to repel the assailant, yet he has no right to repel the threatened assault with naked hands by the use of a deadly weapon in a deadly manner, unless he honestly

believes and has reasonable grounds to believe that he is in imminent danger of death or great bodily harm.

Furthermore, the law does not permit one to commit an assault upon or kill another person merely because of abusive or insulting language used towards him.

Instruction No. 27.

You are instructed that the right of self defense must be exercised within the limits of mere defense and protection, under an apparent necessity to avert by force an unlawful attack. One defending himself must not exceed the bounds of mere defense. If the defendant was justified in defending himself originally, but went further than was necessary to his defense, as the circumstances honestly and reasonably appeared to him at the time, then he is not entitled to be acquitted on the ground of self-defense.

Instruction No. 28.

One who is the aggressor or who provokes the altercation in which he killed the other person engaged in the conflict, cannot successfully invoke the right of self defense to justify or excuse the homicide, unless he in good faith had first withdrawn from the combat at such a time and in such a manner as to have clearly apprised his adversary that he in good faith was desisting, or intended to desist, from further aggressive actions.

If you find beyond a reasonable doubt that the defendant was the aggressor and that by his own acts and conduct he provoked or commenced the difficulty, then the plea of self defense isn't available to him.

Instruction No. 29.

In determining whether or not the death of Peter Betzler was justifiable, you are instructed that the defendant, Don Anthony Herman, could act in the protection of himself upon circumstances as they reasonably and honestly appeared to him at the time. And if defendant acted reasonably and honestly as the danger appeared to him at the time, the law will not hold him responsible, even though he was guilty of misjudgment and exaggeration of the danger as it actually existed.

Instruction No. 31.

▮ Except for instruction No. 29, Herman cites no

cases, and argues only generally as to these self-defense instructions. He objects to instruction No. 29 because it requires Herman to have "withdrawn from the combat" contrary to what he believes the ruling to be in *State v. Lewis*, 6 Wn. App. 38, 491 P.2d 1062 (1971). The instruction held to be erroneous by the Court of Appeals in *Lewis* at page 40 is as follows:

> In connection with the defense of justification, you are instructed that you may consider the words and actions of the deceased prior to the homicide, the relative size and strength of the persons involved, *the availability to defendant of a means of escape from danger,* if any, and all other factors which in your judgment may bear upon your determination as to whether the defendant reasonably believed herself in danger of grievous bodily harm at the time in question.

The error in this instruction is that it allows the jury to infer that if the defendant had an available means of escape, she did not have the right to stand her ground. In the case before us, the jury was told that Herman did not have to retreat, but that if he was the aggressor he would have to break off his aggressive actions before he could successfully invoke the right of self defense. There is evidence in the record that Herman was the aggressor and the instruction was therefore properly given. *State v. Wilson*, 26 Wn.2d 468, 174 P.2d 553 (1946); *State v. Turpin*, 158 Wash. 103, 290 P. 824 (1930).

The third group of assignments of error is directed to the denial of instructions on "proximate cause" and "intervening cause." The instructions given by the court on causation are as follows:

> Homicide is excusable when committed by accident or misfortune in doing any lawful act by lawful means, with ordinary caution and without any unlawful intent.

Instruction No. 19.

> When a defendant claims that he killed another by accident or misfortune, the burden is upon the defendant to prove that the homicide was done by accident.
>
> In sustaining such burden of proof, it is not necessary

for a defendant to prove this to you beyond a reasonable doubt, nor by a preponderance of the evidence. The defendant sustains this burden of proof and is entitled to a verdict of acquittal if from a consideration of all the evidence in this case you have a reasonable doubt as to whether the killing was done by accident or misfortune.

Instruction No. 21.

An "accident" is an event happening without the occurrence of the will of the person by whose agency it was caused. It is an event that takes place without one's foresight or expectation.

An "accident" is not present when a deliberate act is performed, unless some additional, unexpected, independent and unforeseen happening occurs.

"Negligence" is an unintentional breach of a legal duty causing damage reasonably foreseeable, without which breach the damage would not have occurred.

Instruction No. 22.

■ In addition, there is instruction No. 30, set out above. These instructions, taken together, correctly state the law, *State v. Hedges,* 8 Wn.2d 652, 113 P.2d 530 (1941), and permitted Herman to argue his theory of the case.

The fourth group of assignments of error has to do with Herman's contention that an instruction that one intends the consequences of his act defeats his theory that the death was accidental. The instruction to which Herman refers is No. 32, which states:

The court instructs the jury that the law presumes that every man intends the natural and probable consequences of his own intentional and voluntary acts. It is not necessary to establish intent by direct and positive evidence, but intent may be established by inference and in the same way as any other fact by taking into consideration the acts of the parties and all the facts and circumstances of the case.

"Intent" is a mental condition or process and may be shown by direct proof or may be derived from and established by the attendant facts and circumstances as shown by the evidence. In determining the question of the intent of the defendant at the time of the killing herein alleged, if you find from the evidence that the defendant

committed such killing, you may take into consideration the nature and character of the weapon or instrument used, if any; the manner in which such weapon or instrument was used, if at all; the acts and conduct of the defendant, together with all the other facts and circumstances shown by the evidence, and from all these, determine the intent of the defendant in this case.

This instruction did not negate Herman's defense of an accidental killing. *State v. Willis*, 67 Wn.2d 681, 409 P.2d 669 (1966).

In the 15th assignment of error, Herman contends that the prosecuting attorney deliberately violated a discovery order, thereby denying Herman due process. Herman also claims that the prosecution withheld photographs showing defects in Herman's weapon, withheld the name of the officer who took those photographs, withheld laboratory reports concerning the presence or absence of nitrates on Herman and decedent, and reports demonstrating a high percentage of alcoholic content in decedent's blood and urine at the time of the incident, and, in addition, withheld unsigned statements of key witnesses who refused to talk to the defense.

It appears from the record that the defense was supplied with all of the photographs which it requested and which the discovery order required produced. The prosecutor had no intention of calling as a witness the officer who took the photographs of the weapon. Herman does not contend, and the record does not reflect, that the trial court's order of February 28, 1972, which required the police to release to defense counsel Herman's firearm for the purpose of testing it on the police firing range, was not complied with.

The record does not reflect the existence of any laboratory and chemical reports concerning the presence or absence of nitrates on Herman or decedent.

Concerning the alcohol content reports, it appears that the information was given to Herman's counsel almost immediately upon its receipt by the prosecuting attorney.

The "unsigned statements of key witnesses" were the

notes made by the prosecuting attorney while interviewing witnesses. There is nothing in the record which would indicate that the witnesses were made aware of what was in the notes, or had authenticated them in any way. We are at a loss to understand on what theory these notes should be supplied to the defense. They only reflect what the interviewer understood the witnesses to say.

Judgment is affirmed.

FARRIS and CALLOW, JJ., concur.

Petition for rehearing denied March 21, 1974.

Review denied by Supreme Court June 17, 1974.