[No. 1458-2.   Division Two.   July 30, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. EDDIE PERKINS, *Appellant*.

*Richard T. Vlosich,* for appellant.

*Donald F. Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Special Counsel,* for respondent.

PETRIE, J.—Defendant, Eddie Perkins, was sentenced to life imprisonment following conviction of second-degree murder and following a jury's special verdict that he was armed with a deadly weapon at the time of the commission of the crime. He contends on appeal that the charges against him should have been dismissed pursuant to CrR 3.3 because he was not brought to trial within 60 days following his preliminary appearance in court. Alternatively, he contends that he should be granted a new trial because of the cumulative effect of a series of errors committed by the trial court. Those assignments of error raise issues which may be summarized as follows: (1) Did the trial court properly admit evidence of the defendant's extrajudicial inculpatory statements; (2) was the jury properly instructed on the elements of the crime of second-degree murder; (3) was the jury adequately instructed on the defendant's several theories of defense—self-defense, mental irresponsibility, conditioned response, and disassociative reaction; and (4) did the information properly advise the defendant that in the event of his conviction the prosecution would seek an extended sentence authorized by RCW 9.41.025? We find no error which would warrant granting a new trial, and we also find that the defendant was not deprived of a speedy trial. Accordingly, we affirm the judgment.

The salient facts are not seriously disputed. In March 1964, the defendant entered the armed services, was assigned infantry duty, and between 1967 and 1970 served in that capacity in Vietnam. He was promoted to Staff Sergeant and ultimately was assigned to Fort Lewis in June 1973. Several months later he met and subsequently lived with a woman and her several children in Tillicum. On December 2, the defendant shot and killed the woman's estranged husband with a .22 caliber rifle which the defendant had purchased earlier that day. Within 24 hours prior to the shooting, the deceased husband had threatened to kill both his wife and the defendant. Autopsy revealed 13 separate bullet wounds in the decedent. When deputy

sheriffs arrived at the scene, Mr. Perkins had his hands in the air, told the deputies he had shot a man, submitted to handcuffs, and *then*, responding to a question as to the location of the victim, indicated that he was outside by a car and cautioned that he may have a gun.

On December 3, 1973, the defendant was arraigned on a charge of first-degree murder. He entered a plea of not guilty by reason of mental irresponsibility. His trial did not commence until April 23, 1974—141 days following the preliminary appearance. The jury found him guilty of second-degree murder only.

Prior to trial, and pursuant to CrR 3.3(c) and (f), defendant moved for dismissal of the charges with prejudice because he was not brought to trial within 60 days of his preliminary appearance.[1] We find no error in the trial court's denial of the motion.

CrR 3.3(d) provides in part that "All proceedings relating to the competency of the defendant to stand trial" shall be excluded in computing the time between preliminary appearance and trial. In the interim between his preliminary appearance and trial Mr. Perkins was ordered to undergo evaluation at Western State Hospital on three separate occasions to ascertain competency to stand trial. The combined periods of time between the filing dates of the first two commitment orders and the dates on which the evaluation results were filed account for 42 days. The period of time between the filing date of the last commitment order and the date on which the trial court ultimately determined Mr. Perkins' competency to stand trial accounts for another 30 days. Thus, 72 days are excludable in computing

---

[1]CrR 3.3(c) and (f) provide:

"(c) . . . Criminal trials shall take precedence over civil. A defendant unable to obtain pretrial release shall have priority and the charge shall be brought to trial within 60 days following the preliminary appearance.

". . .

"(f) . . . A criminal charge not brought to trial as required by this rule shall be dismissed with prejudice."

timeliness of trial under CrR 3.3. *State v. Setala*, 13 Wn. App. 604, 536 P.2d 176 (1975).

■ The resultant net time for trial is thus reduced to 69 days. Upon being advised that the net delay still exceeded the 60 limit, the trial court on its own motion determined that a reasonable time for continuances was required in the due administration of justice and specifically determined that the defendant was not prejudiced thereby. That discretion, exercisable under the rule (CrR 3.3(e)(3)) and placed upon the record, comports with the procedures recommended by *State v. Williams*, 85 Wn.2d 29, 530 P.2d 225 (1975).

On April 4, 1974, the trial court finally determined that Mr. Perkins was competent to stand trial. A reasonable period thereafter was necessary for both parties to prepare for trial. Indeed, in February, when the court first denied defendant's motion to dismiss the charges, the trial court suggested that a period of 30 days after final evaluation would be a reasonable period of time in which to prepare for trial. Neither party disagreed with the court's suggestion. Accordingly, in denying the motion to dismiss, the court exercised discretion reasonably. Mr. Perkins' trial was conducted within the time frame contemplated by the speedy trial rule.

We turn now to the issues presented by the defendant's demand for new trial.

■ 1. The defendant contends that his inculpatory statements should not have been admitted because he never had the benefit of a *pretrial* confession hearing as authorized by CrR 3.5. Instead, the court interrupted the trial and conducted the hearing immediately before the prosecution presented several witnesses who repeated certain inculpatory statements Mr. Perkins made shortly after the shooting. The procedure was somewhat unusual, but we are not advised of any authority which would prohibit the trial court from conducting the hearing during the presentation of the State's case even though the prosecution knew be-

fore trial that it intended to present these statements to the jury.

Alternatively, the defendant asserts that he was denied a fair trial because the trial court, after initially permitting a deputy sheriff to relate the inculpatory statements that Mr. Perkins made immediately following his arrest, reversed its ruling and advised the jury to disregard the statements made after the arrest. The defendant made no motion for mistrial, but even if he had so moved we do not find circumstances that would have warranted granting the motion. *See State v. Butler*, 9 Wn. App. 347, 513 P.2d 67 (1973). Indeed, the statements were made as part of the investigative process and bore absolutely no taint of inquisition. Arguably, the jury should have been permitted to consider the defendant's responses to the investigative inquiry. *See State v. Cloud*, 7 Wn. App. 211, 498 P.2d 907 (1972). All we decide, however, is that there was no prejudicial error requiring a new trial.

2. Mr. Perkins asserts the jury was not instructed that a *design* to effect the death of the victim is an essential element of the crime of second-degree murder. In one instruction the court did advise that the jury need only find that "the killing . . . was done to effect the death" of the victim. In another instruction, however, the court clearly and expressly instructed:

> Murder in the second degree is the killing of a human being, unless it is excusable or justifiable, when committed with a design to effect the death of the person killed but without premeditation.

We find that the instructions considered as a whole properly stated the law and included all the elements of the crime of second-degree murder. They were sufficient even though one of them omitted some essential part. *State v. Hartley*, 25 Wn.2d 211, 170 P.2d 333 (1946).

3. On the witness stand Mr. Perkins recalled all of the incidents which led up to the shooting, including the facts that he opened the closet where he had previously placed the gun and that he heard a shot, but "then everything

went black." His next recollection is walking to a vehicle accompanied by a deputy sheriff. The defendant's primary defense was that his acts were not consciously or voluntarily performed because at the time he apparently did the shooting he was suffering from a condition which prohibited a willed act.

■ In part, Mr. Perkins contends that the acts of shooting were automatistic in character resulting from the extremely harsh nature of his military training. This jurisdiction has recognized that a true conditioned response evoked by external stimuli may produce acts which completely exculpate the actor because he lacked any criminal intent. *State v. Utter*, 4 Wn. App. 137, 479 P.2d 946 (1971). However, such a defense should not be presented to a jury unless there is sufficient evidence to establish that the defendant in a criminal case was indeed automatically responding to external stimuli by learned physical reactions. We find no medical evidence to support this theory. Hence, any failure of the court to instruct the jury properly on this theory is immaterial.

■ There was, however, medical evidence that at the time of the shooting Mr. Perkins was suffering from one of the hysterical reactions, diagnosed as a disassociative reaction: that he responded to an overwhelming emotional anxiety by a defensive reaction over which he had no conscious control and at a time when he had neither the capacity to know and appreciate the nature and consequences of his acts nor to know and appreciate the criminality of such conduct.

The trial court instructed the jury, in part:

You are instructed that if you find that the defendant at the time of the criminal conduct charged did not have capacity to either (1) know or appreciate the nature and consequences of such conduct; or (2) know or appreciate the criminality of such conduct, then you must find that defendant is not guilty of the crime charged.

The defendant contends that the trial court should have instructed:

If you find that the acts of the defendant caused the death of the deceased but the acts occurred while the defendant was unconscious of his actions, then you are instructed that an act committed while one is unconscious is in reality no act at all. It is merely a physical event or occurrence for which there can be no criminal liability and is a complete defense to the crime charged and hence the defendant is entitled to a complete acquittal.

We find the instruction given permitted the defendant to fully and sensibly argue his contention to the jury in an effective manner. The jury apparently, however, accepted the contrary opinion of another expert witness. We find no error in the court's refusal to give the defendant's proposed instruction.

Further, the defendant contends the jury was confused and misled by a series of instructions on the concepts of insanity, criminal insanity, mental irresponsibility, and irresistible impulse. We have reviewed these instructions, and we are satisfied that they neither confused nor misled the jury. We also find that the jury was properly and sufficiently instructed on the law of self-defense. *See State v. Herman*, 11 Wn. App. 465, 526 P.2d 1221 (1974).

4. The information charged Mr. Perkins with killing the decedent "by shooting him with a .22 rifle loaded with powder and ball," but there is no specific allegation that the prosecution intended to rely upon any of the several enhanced punishment statutes. Accordingly, the jury should not have been asked to return a special verdict on the question of whether the defendant was armed with a deadly weapon or a firearm. *State v. Cosner*, 85 Wn.2d 45, 530 P.2d 317 (1975). Nevertheless, the defendant misconstrues his remedy. A new trial is not warranted; remand for resentencing is the only available remedy. *State v. Frazier*, 81 Wn.2d 628, 503 P.2d 1073 (1972). However, there is no indication that in imposing sentence the trial court gave even the most remote consideration to the jury's special verdict. The special verdict does mandate "a sentence of not less than five years, which sentence shall not be sus-

pended or deferred," RCW 9.41.025 (1), but second-degree murder requires a maximum term of 20 years or more. RCW 9.95.010. The trial court never seriously entertained the possibility of placing Mr. Perkins on probation. In our opinion, upon remand, the trial court would reimpose the same sentence. The maximum sentence already imposed will not be disturbed.

Judgment affirmed.

ARMSTRONG, C.J., and PEARSON, J., concur.

Petition for rehearing denied September 3, 1975.

Review denied by Supreme Court November 12, 1975.