IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31386-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MERSADEZE SIDNEY RIOJAS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Mersadeze Riojas was being questioned by Sergeant Michael

Moses outside a late night party about possible criminal activity by partygoers. Angered

by the line of questions, she walked away, ignoring his command that she was not free to

leave. When he firmly grabbed her upper arm to prevent her from leaving, she swung

around and hit him. She was convicted following a jury trial of third degree assault of a

law enforcement officer.

Ms. Riojas sought to defend on the basis that the sergeant's detention of her was

unlawful under *Terry v. Ohio*;[1] that as a result, he was not performing his "official duties"

at the time she hit him; and that her response to being grabbed was an instinctive act

rather than an intentional one. She argues that the State's evidence was insufficient and

that several evidentiary and instructional errors by the trial court require reversal.

---

[1] 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

Substantial evidence supported the State's case and we find no error or abuse of discretion. We affirm.

FACTS AND PROCEDURAL BACKGROUND

At about one a.m. on a summer morning in 2012, several Walla Walla police officers responded to a report of a party at a warehouse involving "under-aged drinking, fighting[,] and possibly a gun." Report of Proceedings (RP) at 115. Upon arriving at the warehouse, officers saw several vehicles parked outside. They saw open beer cans and bottles and could smell alcohol. They could hear people yelling inside the warehouse (voices they perceived to be female) and the sound of glass breaking.

Sergeant Michael Moses, one of the responding officers, was speaking with a young man who had emerged from the warehouse to object that the officers were trespassing and needed to leave when a young woman, later identified as Bailee Culver, ran out of a door located on a loading dock. Apparently intoxicated and unaware that she was above ground level, Ms. Culver ran off the edge of the dock and immediately fell, tumbling forward and yelling, "'Those Mexican girls are chasing me and . . . throwing bottles at me and I don't know why.'" RP at 122. The defendant, Mersadeze Riojas, ran out the door close on the heels of Ms. Culver and jumped off the loading dock, landing on her feet. Officer Ignacio Colin was standing in the immediate vicinity and as Ms. Riojas straightened up, still headed for Ms. Culver, he grabbed and stopped her, stating, "'You don't want to do that. You don't want to go after her and assault her in front of a

2

police officer.'" RP at 85. Officer Colin continued talking to Ms. Riojas, who calmed down.

According to Officer Colin, Ms. Riojas "appeared to be highly intoxicated." RP at 86. When he asked Ms. Riojas why she had been chasing Ms. Culver, she stated that Ms. Culver had been going after her friend and she did not like that, so she went after Ms. Culver. Ms. Riojas claimed to have recently turned 21 and told the officer she had identification in her car; the officer then escorted her to her car, where they continued talking.

As Officer Colin was finishing up his conversation with Ms. Riojas, Sergeant Moses approached the two. Just as Sergeant Moses reached them, Ms. Riojas stated that Ms. Culver had been chasing her with a knife. Officer Colin took the opportunity of the arrival of Sergeant Moses—his superior—to leave, in order to investigate other partygoers and their cars. As Officer Colin walked away, Sergeant Moses asked Ms. Riojas why she had been fighting, to which Ms. Riojas responded that she had *not* been fighting. Ms. Riojas would later testify that the sergeant's questions were "[a]ccusatory . . . so I told him believe what he wants, obviously he is white, he is going to believe [Ms. Culver] because she is white." RP at 261. Ms. Riojas later admitted that she lied when she said that Ms. Culver had a knife.

Unwilling to talk further with the sergeant, Ms. Riojas said, "'Whatever . . . fuck this,'" and began to walk away. RP at 112. Sergeant Moses told Ms. Riojas that she was

3

not free to leave, to which she responded, "'Fuck you,'" and continued on her way. *Id.* at 113. The sergeant caught up with Ms. Riojas and firmly grabbed her right upper arm. Ms. Riojas immediately swung around and hit him in the lip with her left hand.

Upon being struck, Sergeant Moses pulled Ms. Riojas to the ground and told her she was under arrest for assaulting a police officer. Another officer assisted the sergeant in handcuffing Ms. Riojas and walking her to the patrol car. She resisted the officers' movements, screaming that they were hurting her. Ms. Riojas was the only partygoer arrested that night and was later charged with assault in the third degree under RCW 9A.36.031(1)(g), which criminalizes "[a]ssault[ing] a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault."

The morning after Ms. Riojas's arrest, Detective Miguel Sanchez went to the jail and spoke with her. According to the detective, when he told Ms. Riojas that she had been arrested for assaulting an officer, she laughed and said, "'I didn't hit anybody. Who said that?'" RP at 178. As he was leaving, Ms. Riojas told the detective, "'I can't remember anything.'" *Id.*

Ms. Riojas filed a pretrial *Knapstad*[2] motion to dismiss, arguing that because Sergeant Moses had neither probable cause to arrest nor reasonable suspicion of criminal

---

[2] *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986).

activity sufficient to justify a temporary detention, no rational trier of fact could find that he was performing his official duties at the time of the assault. She argued that no reasonable trier of fact could decide that Ms. Riojas was not acting in self-defense. The trial court denied the motion. In a letter opinion, it found that detention was lawful because "[t]here were 'articulable objective reasons to suspect' that Ms. Riojas was engaged in criminal activity" and "[t]hose facts are not in dispute." Clerk's Papers (CP) at 20.

The State then moved in limine to exclude any evidence or argument that Ms. Riojas acted in self-defense or that her detention or arrest was unlawful. It pointed out that the lawfulness of police conduct is not an element of the crime charged and that there was no evidence to support an imminent threat of serious harm to Ms. Riojas required to establish legitimate use of force in self-defense against a police officer. It argued that an order in limine would ensure that the jurors would not hear "impermissible evidence." CP at 22. The court granted the motion, stating that Ms. Riojas could make an offer of proof to create a record for appeal and could, if she wished, move for reconsideration.

Midway through the trial, Ms. Riojas renewed her request that the court dismiss the assault charge based on the absence of evidence that the sergeant was performing his official duties. The trial court again refused to dismiss.

Ms. Riojas proposed jury instructions, one of which would have informed the jury that "[a]n unlawful detention is by definition not part of lawful police duties," based on a

5

statement made in this court's decision in *State v. Barnes*, 96 Wn. App. 217, 225, 978

P.2d 1131 (1999). CP at 30. Another explained that force used "by a person who

reasonably believes that she is about to be injured or in preventing or attempting to

prevent an offense against the person" was a defense to a charge of third degree assault.

CP at 35 (citing 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY

INSTRUCTIONS: CRIMINAL 17.02 (3d ed. 2008) (WPIC)). Alternatively, Ms. Riojas asked

that the court give WPIC 17.02.01, the pattern instruction for lawful force in resisting

detention. The court refused to give any of the three instructions.

The trial court did instruct the jury on the definition of assault, using the pattern

instruction set forth in WPIC 35.50. Among the definition language included in the

instruction was that "[a]n assault is an intentional touching or striking . . . of a person,

with unlawful force." CP at 44 (Instruction 5). Ms. Riojas did not object to the

instruction.

The jury found Ms. Riojas guilty as charged. She appeals.

### ANALYSIS

Ms. Riojas assigns error to the trial court's (1) refusal to dismiss the charge for

insufficient evidence, (2) exclusion of evidence that she acted in self-defense and her

training in self-defense, (3) alleged violation of her constitutional right to present a

defense, (4) refusal to give Ms. Riojas's proposed instruction on self-defense, and (5) use

of the undefined and allegedly vague term "unlawful force" in its instructions to the jury.

We begin by summarizing Washington law on two matters: first, the construction of the "performing official duties" element of third degree assault of a law enforcement officer, and second, the circumstances under which a person may lawfully use force in self-defense against a law enforcement officer. We then turn to Ms. Riojas's assignments of error.

## I.   LAW ENFORCEMENT OFFICERS' PROTECTION FROM ASSAULT

### A. "Performance of official duties" under RCW 9A.36.031(1)(g)

RCW 9A.36.031 includes two means of committing third degree assault against a law enforcement officer engaged in performing official duties at its subsections (1)(a) and (1)(g). RCW 9A.36.031(1)(g) is the broader of the two. *See State v. Ross*, 71 Wn. App. 837, 843, 863 P.2d 102 (1993) (characterizing subsection (g) as "the broader and more inclusive subsection"). While RCW 9A.36.031(1)(a) applies to a defendant's assault preventing or resisting "the lawful apprehension or detention of himself, herself, or another person," RCW 9A.36.031(1)(g), with which Ms. Riojas was charged, provides:

> (1) A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree:
> . . . .
> (g) Assaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault.

In *State v. Mierz*, 127 Wn.2d 460, 901 P.2d 286 (1995), the meaning of "performing his or her official duties" as used in RCW 9A.36.031(1)(g) was squarely

7

presented in a case involving a defendant charged with assaulting wildlife officers. The officers entered Mierz's property to capture coyote pups that he possessed illegally. He argued that the officers had entered his property without a warrant in violation of the Fourth Amendment, were making an illegal arrest, and therefore could not have been performing official duties within the meaning of the statute. Stating that Mierz proposed an "overly restrictive definition of the term 'official duties,'" the court said:

> We hold that "official duties" as used in RCW 9A.36.031(1)(g) encompass all aspects of a law enforcement officer's good faith performance of job-related duties, excluding conduct occurring when the officer is on a frolic of his or her own. [*State v.*] *Hoffman*, 116 Wn.2d [51,] 99-100[, 804 P.2d 577 (1991)]. RCW 9A.36.031(1)(g) includes assaults upon law enforcement officers in the course of performing their official duties, even if making an illegal arrest.

127 Wn.2d at 479.

Elsewhere, the court elaborated on its earlier decision in *Hoffman*, which had articulated a rule "adopt[ing] a liberal view of 'official duties' . . . for purposes of charging a person with a crime." *Id.* at 473. In *Hoffman*, the defendant shot a law enforcement officer in the back and claimed he could not be convicted of aggravated first degree murder because the officer was effecting an illegal arrest. RCW 10.95.020(1) defines aggravated first degree murder as including the first degree murder of a law enforcement officer "who was performing his or her official duties at the time of the act resulting in death." As noted in *Mierz*, *Hoffman* held that even an officer effecting an

8

arrest without probable cause may still be engaged in official duties provided the officer is not on a frolic of his or her own.

The unanimous court in *Mierz* stated that it would "not condone violence against law enforcement officials," including that it would not "adopt a rule . . . that permits citizens to claim a right of self-defense against law enforcement officials who are performing their duty in good faith and who do not place citizens in an imminent threat of serious bodily injury." 127 Wn.2d at 482. It observed that "'the officer is entitled to be protected by the law from assault.'" *Id.* at 473 (quoting *Hoffman*, 116 Wn.2d at 100).

B.   Lawful use of force in resisting arrest

When a defendant is charged with assault of a layperson, it has long been the law in Washington that "self-defense may be justified by apparent danger to the person claiming the benefit of the defense, as opposed to actual danger." *State v. Bradley*, 141 Wn.2d 731, 736, 10 P.3d 358 (2000); RCW 9A.16.020(3) (setting forth the general test for self-defense). In order to establish self-defense the jury must "find only that the defendant reasonably believed that he or she was in danger of imminent harm." *State v. Riley*, 137 Wn.2d 904, 909, 976 P.2d 624 (1999).

A different rule applies where a defendant claims self-defense in using force against a law enforcement officer. *Bradley*, 141 Wn.2d at 737. The policy rationale for imposing a different rule was first articulated in *State v. Westlund*, 13 Wn. App. 460, 467, 536 P.2d 20 (1975):

9

> [T]he arrestee's right to freedom from arrest without excessive force that falls short of causing serious injury or death can be protected and vindicated through legal processes, whereas loss of life or serious physical injury cannot be repaired in the courtroom. However, in the vast majority of cases . . . resistance and intervention make matters worse, not better. They create violence where none would have otherwise existed or encourage further violence, resulting in a situation of arrest by combat.

In *State v. Holeman*, the Washington Supreme Court adopted the *Westlund* court's analysis, explaining that "'[o]rderly and safe law enforcement demands that an arrestee not resist a lawful arrest . . . unless the arrestee is actually about to be seriously injured or killed.'" 103 Wn.2d 426, 430, 693 P.2d 89 (1985) (quoting *Westlund*, 13 Wn. App. at 467).

*Ross*, 71 Wn. App. at 843, held that the same standard for self-defense against a law enforcement officer established in *Holeman* and *Westlund* applies to the third degree assault of a police officer charged under RCW 9A.36.031(1)(g). As a result, a jury is properly instructed in a case such as this that the use of force upon or toward a law enforcement officer "'is only lawful when . . . used by a person who is *actually about to be seriously injured.*'" *Id.* at 840.

*Westlund*, *Holeman*, and *Ross* involved lawful arrests. The Washington Supreme Court extended the rationale for a heightened standard for claiming self-defense to unlawful arrests in *State v. Valentine*, 132 Wn.2d 1, 20-21, 935 P.2d 1294 (1997). As with lawful arrests, the court stated that "although a person who is being unlawfully arrested has a right . . . to use reasonable and proportional force to resist an attempt to

inflict injury on him or her during the course of an arrest, that person may not use force against the arresting officers if he or she is faced only with a loss of freedom." *Id.* at 21. It observed that if it were the rule "that a person being unlawfully arrested may always resist such an arrest with force, we would be inviting anarchy." *Id.*

Ms. Riojas makes the bald statement that *Valentine* does not apply here, because "this was not an arrest." Br. of Appellant at 24. She provides no authority and makes no attempt to argue why a defendant should have a greater right to resist a *Terry* stop, which is "significantly less intrusive than an arrest," *State v. Kennedy*, 107 Wn.2d 1, 6, 726 P.2d 445 (1986), than the right she has to resist arrest. The reasoning of *Westlund* and *Holeman* appear to be equally if not more compelling where a defendant is being subjected to only investigative detention. Because we do not consider inadequately briefed arguments, we will not consider further the dubious suggestion that *Valentine* does not apply. RAP 10.3(a)(6).

## II. ASSIGNMENTS OF ERROR

With that overview of Washington law addressing the limited circumstances under which force can be used against a law enforcement officer, we turn to Ms. Riojas's assignments of error.

### A. Sufficiency of evidence

Ms. Riojas first argues that the trial court erred in refusing to dismiss the charge against her for insufficient evidence that Sergeant Moses was performing his official

11

duties at the time she committed the assault. Whether intended as a challenge to the trial court's denial of her *Knapstad* motion, her midtrial motion, or as a separate appeal challenging the sufficiency of the evidence, the standard of review is the same. *State v. Athan*, 160 Wn.2d 354, 378 n.5, 158 P.3d 27 (2007). "Due process requires the State to prove all elements of the crime beyond a reasonable doubt." *State v. Washington*, 135 Wn. App. 42, 48, 143 P.3d 606 (2006). Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, it allows any rational trier of fact to find all of the elements of the crime charged beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

Applying *Mierz*'s construction of "performing his or her official duties," the question is whether, viewed in the light most favorable to the State, its evidence would allow a rational trier of fact to find that Sergeant Moses was engaged in some aspect of a good faith performance of job-related duties, as distinguished from "a frolic of his own." As established by *Mierz*, whether the sergeant's detention of Ms. Riojas was legal or illegal is irrelevant.

The State presented evidence that the sergeant was pursuing information relevant to Ms. Culver's allegation that other girls were chasing and throwing bottles at her, and Ms. Riojas's immediately prior statement that Ms. Culver had been chasing her with a knife. A rational jury could readily find that the sergeant was engaged in an ongoing investigation. There is no merit to the suggestion that because Officer Colin had already

12

questioned Ms. Riojas outside the presence of Sergeant Moses, a rational jury must construe the sergeant's actions as no longer job-related. The sergeant was not engaged in a personal frolic and the court did not err in refusing to dismiss the charge.

Ms. Riojas nonetheless contends we are bound by this court's statement in *Barnes* that "[a]n unlawful detention is by definition not part of lawful police duties." 96 Wn. App. at 225. The defendant in *Barnes* did not assault a law enforcement officer. Rather, when told during a detention that the officer was going to pat him down for weapons, and knowing that he was carrying crack cocaine and a crack pipe, the defendant "physically resisted the search. He jammed his hands in his pockets and struggled." *Id.* at 220. He was arrested for obstructing a law enforcement officer, but was never prosecuted for that crime; instead, he was prosecuted for controlled substances crimes based on the drugs and paraphernalia found when he was searched incident to arrest.

Under RCW 9A.76.020(1), which was the basis for Barnes's arrest, it is a crime if a person "willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties." The differently-worded obstruction statute is concerned with the mere hindrance or delay of police work, not the danger to officers that has provided the basis for the Washington courts' construction of RCW 9A.36.031(1)(g). When it comes to the meaning of "performance of official duties" for purposes of the third degree assault charged here, it is *Mierz* and *Hoffman*, not *Barnes*, that are controlling.

13

### B. Exclusion of evidence

Ms. Riojas's second and third assignments of error are that the court erred in excluding evidence of Sergeant Moses's use of force in arresting her and her earlier training in self-defense. The two types of evidence were offered for different purposes, so we address them separately.

*Evidence of the sergeant's use of force.* In his opening statement, Ms. Riojas's lawyer told the jury that after Ms. Riojas hit Sergeant Moses, she "was taken into a hair hold and not just placed on the ground, but slammed on the ground, and got her arms messed up pretty bad." RP at 80. When he attempted to cross-examine the State's first witness about the sergeant's postassault use of force, however, the State objected on relevance grounds and its objection was sustained. Defense efforts to question other witnesses about the sergeant's use of force after being hit by Ms. Riojas were likewise met with objections that were sustained. Outside the presence of the jury, the court explained that it was excluding the evidence based on ER 403 and its conclusion that the limited probative value of the evidence was substantially outweighed by the danger of confusing the issues and misleading the jury. As the trial court recognized, whether the police "over-reacted after the fact" was "not what we're here about," and while "there is all sorts of remedies for that sort of thing . . . they are not going to be in this court." RP at 99-100. It expressed its concern that the admission of the evidence would turn the trial into a "trial of relative culpability, or who used excessive force the worst." RP at 99.

14

The admissibility of evidence rests within the sound discretion of the trial court. *State v. Atsbeha*, 142 Wn.2d 904, 913-14, 16 P.3d 626 (2001). We will not reverse a trial court's decision to exclude evidence absent an abuse of discretion. *State v. Cuthbert*, 154 Wn. App. 318, 337, 225 P.3d 407 (2010).

"Relevant evidence" is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. The threshold for admitting relevant evidence is very low, and "[e]ven minimally relevant evidence is admissible." *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002). But relevant evidence may be excluded under ER 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Ms. Riojas argues that the degree of force used by Sergeant Moses after she struck him was relevant in determining the degree of force he used *immediately before* Ms. Riojas assaulted him. Given the high standard imposed for lawful use of force against a police officer, only evidence that Ms. Riojas was actually in danger of serious injury and intentionally acted to defend herself would have been relevant to her right to claim self-defense. But as the court observed elsewhere, "there is not a scintilla of evidence . . . that [Ms. Riojas] was in actual and imminent danger of serious injury." RP at 308. And she

15

never claimed that she intentionally defended herself—she claimed that she was surprised by having her arm grabbed and responded instinctively.

The defense could and did argue that the State opened the door to evidence of the sergeant's postarrest use of force by eliciting testimony from Officer Colin that as the officers escorted her to the patrol car, Ms. Riojas "might" have said, "'You are hurting me'"—especially after the prosecutor told the court outside the presence of the jury that she elicited the evidence only "to demonstrate her state of mind, that she was just angry that night." RP at 87, 96. It was untenable for the prosecutor to believe that the State could present evidence of Ms. Riojas's screams, argue that they were proof of her bad attitude, and then object to a defense effort to show that Ms. Riojas was screaming because she had actually been hurt in the course of the arrest.

As the lawyers continued to argue the evidentiary issue outside the presence of the jury, the prosecutor appears to have realized that she might indeed be opening the door, and she offered to ask no further questions about Ms. Riojas's behavior after she was placed under arrest. The court ultimately ruled:

> I will say this: If the State goes any further and elicits further reactions from her, then, then the question is going to be back to, well, what she is reacting to and it would open the door further. At this point I'm shutting the door. And if the State reopens it, be it on their heads.

RP at 105. The court then asked the prosecutor if she understood what it was trying to say, adding, "You made this offer [to stop the line of questioning] earlier and basically

16

what I'm saying, I wouldn't treat it as an offer. I would treat it as what you better do to keep the door shut." *Id.* The State steered clear of Ms. Riojas's postarrest conduct thereafter.

The trial court's handling of the issue was reasonable. Officer Colin's testimony as to what Ms. Riojas "might" have said was insignificant without further development. A complete vetting of evidence as to the force used in the arrest had a real potential for creating jury confusion about whether the sergeant's use of force mattered. We find no abuse of discretion.

*Self-defense training.* At trial, the defense sought to characterize Ms. Riojas's conduct as automatic or reflexive, as opposed to intentional. To support this theory, Ms. Riojas's lawyer questioned her about her training in martial arts. She testified that she took martial arts in middle school and at the community college, and that she took a self-defense class over the summer. When her lawyer's questions changed from asking about "martial arts" to "self-defense," the State objected and its objection was sustained.

Argument about further questioning was held outside the presence of the jury. Ms. Riojas's lawyer made an offer of proof by questioning her further. When asked whether she believed that her physical response to being grabbed by Sergeant Moses "was in part because of [her] training and experience," Ms. Riojas responded, "Yes." RP at 258. After hearing the offer of proof, the court ruled that Ms. Riojas could describe

17

what she did, but that any reference to "self-defense classes or instinctive, or moves that you make in response to grabbing" would not be admitted. RP at 256-57.

Intent is an implied element of third degree assault. *State v. Tunney*, 77 Wn. App. 929, 934, 895 P.2d 13 (1995), *aff'd*, 129 Wn.2d 336, 917 P.2d 95 (1996). "A person acts with intent or intentionally when he or she acts with the objective or purpose to accomplish a result which constitutes a crime." RCW 9A.08.010(1)(a). According to Ms. Riojas, the evidence regarding her training "was offered on the issue of intent, so the jury could evaluate whether someone who had been trained to react to being grabbed could made [sic] an automatic response, without the intent to commit an assault." Reply Br. of Appellant at 5.

Washington courts have not analyzed a defendant's claim of "conditioned response" in terms of intent. In three decisions, they have analyzed a defense of conditioned response as bearing on voluntariness as a component of a crime's actus reus. *See State v. Utter*, 4 Wn. App. 137, 139, 479 P.2d 946 (1971) (defendant asserted that homicide was a conditioned response to "jungle warfare training and experiences in World War II"); *State v. Perkins*, 14 Wn. App. 27, 32, 538 P.2d 829 (1975) (homicide was a conditioned response to "the extremely harsh nature of his military training"); *State v. Deer*, 175 Wn.2d 725, 731-33, 287 P.3d 539 (2012) (defendant charged with third degree rape of a child was asleep during some acts of intercourse with 15-year-old boy), *cert. denied*, 133 S. Ct. 991 (2013). All three cases have characterized the defense as

18

requiring an unconscious or automatistic act. *Utter*, 4 Wn. App. at 141; *Perkins*, 14 Wn. App. at 32; *Deer*, 175 Wn.2d at 733-34. In its most recent decision, *Deer*, the court held that while a defendant "is entitled to argue a lack of conscious action, [the] claim is properly treated as an affirmative defense, much like claims of involuntary intoxication, insanity, or unwitting possession." 175 Wn.2d at 733.

*Utter* and *Perkins* addressed the evidence of unconscious or automatistic conduct required before a defense of conditioned response can be submitted to the jury, and in both cases, the appellate courts affirmed the trial courts' determinations that there was insufficient evidence. In *Utter*, the defendant testified to his jungle warfare experiences and to prior violent reactions and presented expert psychiatric testimony on conditioned response. The evidence was found to be insufficient to present a jury issue, though, because no one could testify to what had occurred between the defendant and his victim; the jury would be speculating.

In *Perkins*, the defendant presented evidence of his military training and that "'everything went black'" before he committed a homicide, but the appellate court held that a defense that a criminal act was automatistic "should not be presented to a jury unless there is sufficient evidence to establish that the defendant . . . was indeed automatically responding to external stimuli by learned physical reactions." 14 Wn. App. at 31-32. It continued that because "[w]e find no medical evidence to support this theory . . . any failure of the court to instruct the jury properly on this theory is immaterial." *Id.*

19

Here, Ms. Riojas was allowed to testify that she was not expecting to be grabbed by Sergeant Moses, that it surprised her, that she reacted automatically, and that she had not intended to hit the sergeant. Among her testimony was the following:

Q. When [Sergeant Moses] grabbed you by the arm would you describe
   that you were or were not surprised?
A. I was surprised.
Q. And would you characterize your surprise as a minor or little
   surprise, or were you a lot surprised?
A. A lot surprised.
Q. And what was your reaction to that?
A. I had an automatic reaction. He grabbed me so I went like that
   (indicating) to get away.

RP at 264.

While Ms. Riojas was not allowed to testify before the jury to her belief that her physical response was "in part because of her training and experience," as she had during her offer of proof, no evidence was presented during the offer of proof that she was *qualified* to express an opinion on the automatistic nature of her response. Because she offered no qualified expert testimony that her reaction was automatistic, her offer of proof fell short of the expert testimony that *Perkins* held is required to present a defense of conditioned response.

Given the insufficiency of Ms. Riojas's offer of proof in support of her right to assert a defense of automatistic response, the trial court did not abuse its discretion in sustaining the State's objections.

20

### C. Right to present a defense

Ms. Riojas argues that even if the trial court's rulings were not an abuse of discretion under the rules of evidence, they denied her her constitutional right to present a defense.

State rule makers have broad latitude to establish rules excluding evidence from criminal trials, but "[t]his latitude . . . has limits. 'Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense."'" *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984))).

Evidentiary rules can impermissibly abridge a criminal defendant's right to present a defense if they are "'arbitrary or disproportionate' and 'infringe[ ] upon a weighty interest of the accused.'" *State v. Rafay*, 168 Wn. App. 734, 796, 285 P.3d 83 (2012) (alteration in original) (internal quotation marks omitted) (quoting *United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998)), *review denied*, 176 Wn.2d 1023, *cert. denied*, 134 S. Ct. 170 (2013). The constitutional concern is with evidence that is relevant but excluded by rules that serve no legitimate purpose or that are disproportionate to the ends they are asserted to promote. *Scheffer*, 523 U.S. at 308; *State*

21

*v. Hudlow*, 99 Wn.2d 1, 14-15, 659 P.2d 514 (1983). Article I, section 22 of the Washington Constitution guarantees criminal defendants a right to present testimony in their defense that is equivalent to the right guaranteed by the United States Constitution. *See Hudlow*, 99 Wn.2d 1.

In reviewing Ms. Riojas's claim that she was denied the right to present a defense, we review whether the evidence she sought to offer was relevant and was excluded for a reason that was arbitrary or disproportionate and infringed upon an interest on her part that was weighty. The evidence she wished to offer on Sergeant Moses's use of force while arresting her is readily addressed: the evidence was not relevant. A criminal defendant has no constitutional right to have irrelevant evidence admitted in his or her defense. *Scheffer*, 523 U.S. at 308; *Hudlow*, 99 Wn.2d at 14-15.

As to the evidence she wished to offer suggesting that the swing she took at Sergeant Moses was unconscious and automatistic, ER 701 provides that a witness's testimony in the form of opinions or inferences is limited to opinions and inferences that (relevant here) are rationally based on the perception of the witness and are not based on scientific, technical, or other specialized knowledge within the scope of ER 702. Washington decisions have held that a defendant's right to present a defense is not violated by excluding the opinion testimony of an unqualified expert. *See State v. Soper*, 135 Wn. App. 89, 96, 143 P.3d 335 (2006) (excluding testimony of unqualified physician that defendant used marijuana for medical reasons did not violate constitutional right to

22

present a defense); *State v. Willis*, 113 Wn. App. 389, 54 P.3d 184 (2002) (trial court's exclusion of testimony of expert in rape case did not violate defendant's constitutional right to present a defense where expert had insufficient information from which to form helpful opinions), *rev'd in part on other grounds*, 151 Wn.2d 255, 87 P.3d 1164 (2004).

The evidence rules dealing with opinions and experts serve a legitimate purpose that is particularly clear where, as here, a defendant offers her own opinion or inference on a medical or psychological matter as to which she has no apparent knowledge or training. She was not denied her constitutional right to present a defense.

### D. Refusal to give requested instruction

Ms. Riojas next argues that the trial court erred in refusing to give her proposed instruction on self-defense, which was based on WPIC 17.02. "A criminal defendant is entitled to an instruction on his or her theory of the case if the evidence supports the instruction." *State v. Werner*, 170 Wn.2d 333, 336, 241 P.3d 410 (2010). "To raise self-defense before a jury, a defendant bears the initial burden of producing some evidence that his or her actions occurred in circumstances amounting to self-defense." *Riley*, 137 Wn.2d at 909. "A trial court's refusal to give instructions to a jury, if based on a factual dispute, is reviewable only for abuse of discretion," while its "refusal to give an instruction based upon a ruling of law is reviewed de novo." *State v. Walker*, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998).

23

The pattern instruction that Ms. Riojas proposed is used when a defendant has presented sufficient evidence to raise a claim of self-defense against a lay victim. It provides that the use of force toward another is lawful when used "by a person who reasonably believes that she is about to be injured or in preventing or attempting to prevent an offense against the person, and when the force is not more than is necessary." CP at 35.

As earlier discussed, a defendant's use of force upon or toward a law enforcement officer is only lawful when used by a person who is actually about to be seriously injured. No evidence was presented or offered that Ms. Riojas was in actual danger of serious injury. Insufficient evidence supported giving *any* self-defense instruction, and the instruction that Ms. Riojas proposed described the general standard for self-defense rather than the heightened standard applicable to the crime of third degree assault with which she was charged. The trial court did not abuse its discretion in refusing to give the instruction.

E.   Reference to "unlawful force" in defining assault

Finally, Ms. Riojas contends that the trial court erred in including the phrase "unlawful force" in its instruction to the jury defining assault without further defining that term. The court's instruction defined three means of committing assault, each of which provided that an act of assault is one done "with unlawful force." CP at 44 (Instruction 5).

24

Washington courts typically define "assault" as "'an attempt, with unlawful force, to inflict bodily injury upon another, accompanied with the apparent present ability to give effect to the attempt if not prevented.'" *State v. Krup*, 36 Wn. App. 454, 457, 676 P.2d 507 (1984) (quoting *State v. Stewart*, 73 Wn.2d 701, 703, 440 P.2d 815 (1968)). But the Washington pattern instruction, on which the trial court's instruction 5 was based, brackets the phrase "with unlawful force." It states in its note on use that the phrase "with unlawful force" should be used "if there is a claim of self[-]defense or other lawful use of force." WPIC 35.50 note on use at 548. The comment to WPIC 35.50 states that if there is not support for a claim of self-defense, "the jury should not be left to speculate on what might constitute 'lawful' conduct." *Id.* cmt. at 550; *accord State v. Calvin*, 176 Wn. App. 1, 2013 Wash. App. LEXIS 1276, at *20, 316 P.3d 496, 505 ("The term 'unlawful force' is only necessary in the definition of assault when there is a specific argument from the defense that the use of force was somehow lawful."), *petition for review filed*, No. 89518-0 (Wash. Nov. 12, 2013).

According to the note on use and the comment, the bracketed language "with unlawful force" should not have been included in the instruction in this case. But Ms. Riojas never objected to inclusion of the language. "An assignment of error against a given instruction, based upon a theory not presented to the trial court at the time exception is taken, will not be considered on appeal." *State v. Upton*, 16 Wn. App. 195, 203, 556 P.2d 239 (1976).

25

The concern reflected in the note on use and comment is that the jury will speculate on what might constitute a "lawful" use of force by a defendant in a case where no evidence supports any lawful use of force—in other words, the jury might speculate in the defendant's favor, without a basis in law. Ms. Riojas's competent defense lawyer tried repeatedly to get some evidence or instruction on self-defense before the jury. We strongly suspect that his failure to object to the "with unlawful force" language was tactical. *Cf. State v. Hughes*, 106 Wn.2d 176, 192-93, 721 P.2d 902 (1986) (concluding, where the same language was included in the instruction absent a defense, that "experienced trial defense counsel considered the word 'unlawful' helpful to the defendant's theory of the case at trial or, at least, not harmful"). In any event, we will not consider a challenge to the instruction for the first time on appeal. RAP 2.5(a).

## STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds, Ms. Riojas raises two.

*Inconsistent Testimony/Invalid* Terry *Stop.* Ms. Riojas contends that Sergeant Moses made statements in his police report that contradict his trial testimony. In his police report, Sergeant Moses wrote that "[i]t was obvious" Ms. Riojas had "made . . . up" the business about Ms. Culver having come after her with a knife. CP at 17. Ms. Riojas claims this statement is inconsistent with Sergeant Moses's testimony at trial that he had grounds to detain Ms. Riojas based on her statement that Ms. Culver had a knife. She argues that if the sergeant believed she was lying, he had no basis to detain her

No. 31386-7-III
*State v. Riojas*

further for questioning.

Ms. Riojas fails to explain why, if there is an inconsistency, it presents a reversible trial error. As earlier discussed, whether her detention was lawful or unlawful is irrelevant to her guilt. We will not consider a statement of additional grounds if it does not inform us of the nature of the error. RAP 10.10(c).

*Unfair Treatment.* Ms. Riojas next argues that she was treated unfairly, as she was the only individual arrested at the party. She also claims that Sergeant Moses singled her out by questioning her, but not Ms. Culver. Here again, she provides no explanation of the nature of any legal error and we will not consider it. *See id.*

Affirmed.

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, C.J.

WE CONCUR:

Brown, J.

Lawrence-Berrey, J.

27